## ADELAIDE W. ADAMS *vs.* HARRY W. ADAMS.

*Jurisdiction in Divorce—Adultery Committed in This State by a Non-Resident.*

While a husband and wife were residents of another State, the husband committed adultery in this State. Subsequently the wife became a resident of this State and within a few months filed a bill for a divorce on the ground of such adultery. *Held,* that the Court has jurisdiction of the suit under Code, Art. 16, sec. 35, which provides that a bill for divorce may be filed against a non-resident in the Court of the county where the plaintiff resides, and under Code, Art. 16, sec. 38, providing that no person shall be entitled to apply for a divorce, when the cause for a divorce occurred out of this State, unless the plaintiff or defendant shall have resided within this State for two years next preceding the application. In this case the cause for the divorce was the adultery which was committed in this State.

Appeal from the Circuit Court for Dorchester County (LLOYD, J.)

The cause was submitted to the Court on brief by:

*Harrington & Mace,* for the appellant.

No appearance for the appellee.

PEARCE, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Dorchester County dismissing the plaintiff's bill for a divorce from her husband, upon the ground of his adultery which was established by the testimony. It does not appear where either of the parties resided before their marriage, but they were married in New York City on January 8th, 1903, and immediately thereafter went to reside near Bridgeville, Delaware.

While they were residing there, the defendant on several occasions between the date of said marriage and about August 10th, 1903, committed adultery in Caroline County, Maryland, with one Bertha Pastwater and upon being informed of this fact, and receiving his admission of his guilt, he left home declaring he would never live with his wife again. Upon learning that he was still while absent from home, continuing his relations with the woman mentioned, the plaintiff determined not to live with him again, and never afterwards cohabited with him, and in January, 1904, established her residence in Dorchester County in this State upon a farm which she then purchased.

This bill was then filed June 23rd, 1904, and was dismissed for want of jurisdiction. In the opinion accompanying the decree, the Judge said: "To me, it would seem that the cause of divorce really occurred in Delaware, and their marriage relations if broken up or destroyed were broken up in Delaware. Neither party was a citizen of Maryland. True, the evidence of the adulterous act shows it to have been committed in Maryland, but as a cause of divorce it must necessarily relate to parties as husband and wife living in Delaware. There were no marriage relations in Maryland to which the adultery could refer, and as the husband is not a resident of Maryland, but resides in Delaware or elsewhere, the wife should either bring her suit in Delaware or reside in this State two years before bringing suit here."

Section 35 of Art. 16 of the Code gives jurisdiction to the Courts of equity of this State of all applications for divorce, and provides that "any person desiring a divorce shall file his or her bill in the Court, either where the party plaintiff or defendant resides; or if the party against whom the bill is filed be a non-resident then such bill may be filed in the Court where the plaintiff resides."

Section 36 authorizes the Court to decree a divorce *a vinculo* "for the following causes," among which is enumerated, *adultery.* Section 38 provides that "no person shall be entitled to make application for a divorce where the causes for

divorce occurred out of this State, unless the party plaintiff or defendant shall have resided within this State for two years next preceding such application."

In dismissing this bill, the Court held that though the act of adultery was committed in Maryland, yet, *as a cause of divorce*, it must be regarded as occurring in Delaware, since there was no marriage relation in Maryland to which the act of adultery could be referred.

But this is to confound cause and effect. The statute in enumerating the *causes* of divorce, specifies *adultery* as one of these causes, and does not limit or restrict the adultery in respect of time or place, or in any way whatever. Adultery is an act, and that act wherever committed give the injured party a right to a divorce, to be enforced in the manner and at the time prescribed by law. The only limitation upon the enforcement of this right is that if the act was committed without the State, no divorce can be granted by the Courts of this State, except to a plaintiff who has resided within the State for two years before filing the bill, or against a defendant who has resided in the State for the same time, before the bill was filed. In any case however, the dissolution of the marriage relation is the effect of the divorce whose cause was the act of adultery, and that act in this case not having been committed out of the State, the case does not fall within section 38. Construing the sections above as parts of an orderly and harmonious system we see they were enacted for the purpose of giving redress for conjugal wrongs only *to* those who, as residents of this State are under the protection of its laws, or *against* those who, as such residents, are amenable to our laws. *Dorsey* v. *Dorsey*, 7 Watts, 350. This policy recognizes "the well-settled principle of *general* law upon this subject, that the tribunals of a country have no jurisdiction over a cause of divorce, wherever the offense may have occurred, if neither of the parties has an actual *bona fide* domicil within its territory." *Ditson* v. *Ditson*, 4 R. I. 93. This is so, because every suit for divorce is a proceeding to alter the *status* of a person, and not to punish a crime. 9 *Am. & Eng. Ency.*

*of Law,* 2 ed. 741; and from this it follows as stated in 14 *Cyc.,* 591, that, "if the Court *otherwise* has jurisdiction of the cause, the fact that the offense was committed without the State does not affect the question of jurisdiction; and on the other hand, the Court will not assume jurisdiction, merely because the offense was committed within the jurisdiction if the parties are non-residents." As was said in *Ditson* v. *Ditson, supra,* p. 93, "Every nation or State has the right to determine the *status* of its own domiciled subjects or citizens without interference by foreign tribunals in a matter with which they have no concern." And p. 106, "In the exercise of this judicial power, and in order to the validity of a decree of divorce, the general law does not deprive a State of its proper jurisdiction over the condition of its own citizens, because non-residents, foreigners, or domiciled inhabitants of other States have not, or will not become, and cannot be made to become personally subject to the jurisdiction of its Courts." In such cases, such notice, actual or constructive, as the nature of the case admits of, and the practice of the Courts sanction, will suffice.

In some of the earlier cases as in *Dorsey* v. *Dorsey, supra,* it was suggested that during coverture the wife's domicil must necessarily in all cases be that of the husband, and this is the general rule, but we think this case comes within the exception stated in *Ditson* v. *Ditson,* viz: "That when the husband is guilty of such dereliction of duty in the relation, as entitles her to have it either partially or totally dissolved, she not only may, but must, to avoid condonation, establish a separate domicil of her own. This she may establish, nay, when deserted, or compelled to leave her husband, necessity frequently compels her to establish, in a different judicial or State jurisdiction than that of her husband. Under such circumstances she gains, and is entitled to gain, a domicil of her own," sufficient to support jurisdiction.

The plaintiff in this case therefore had acquired a *bona fide* legal domicil for the purpose of jurisdiction, and her bill was erroneously dismissed.

The decree of the Circuit Court is reversed with costs to

the appellant above and below, and *a divorce a vinculo matri-monii* will be granted.

                                                *Decree reversed.*

(Decided June 22nd, 1905.)