619 A.2d 561

**Louis Alphonso FLETCHER**

**v.**

**Charlotte Ann FLETCHER.**

**No. 1081, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Feb. 2, 1993.

Richard D. Rosenthal (Allen N. Horvitz and Franklin & Schapiro, Chartered, on brief), Baltimore, for appellant.

Constance K. Putzel, Towson (Michael J. Chomel, Evans, George and Bronstein, Towson, Brian D. West and Sand-

ground Barondess & West, Vienna, VA, on brief), for appellee.

Argued before WILNER, C.J., and WENNER and MOTZ, JJ.

WILNER, Chief Judge.

That Louis and Charlotte Fletcher each wish to end their marriage is apparent. The question, as this case has unfolded, seems to be whether, in the end, it will be Maryland or Virginia that will perform the *coup de grace.* Louis filed suit in the Circuit Court for Baltimore City in September, 1991; Charlotte filed suit in the Circuit Court for Fairfax County two months later. Each has moved to dismiss the other's action, each has moved to enjoin the other from proceeding with the action, and, regrettably, both Virginia and Maryland have issued such injunctions.

The case is before us because the Circuit Court for Baltimore City, on motion and without taking any evidence, dismissed Louis's action, with prejudice, on the ground that Maryland had no jurisdiction in the matter. Louis appealed, and, upon his assertion that the Virginia court would likely honor an injunction restraining Charlotte from proceeding in that State pending this appeal and it appearing to us from what was alleged in the motion and response that the Baltimore City court had erred in its conclusion that it had no jurisdiction, we issued such an injunction. Louis was overly optimistic with respect to Virginia's reaction. Charlotte ignored the injunction, and so did the Virginia court, which has not only proceeded apace but, as noted, issued its own injunction restraining Louis from proceeding in Maryland, an injunction that Louis, with equal defiance, has ignored. The only issue now before us is whether, indeed, the court below erred in dismissing the action on jurisdictional grounds. We think it did, and so we shall reverse its judgment.

The action was filed in Baltimore City on September 27, 1991. In the complaint, which was based entirely on Char-

lotte's alleged adultery, Louis averred that the parties were married in Maryland in 1967, that he was currently a resident of Maryland, that the adultery occurred in Maryland, that the parties had jointly owned property in Virginia, and that appellee had property in her own name in Maryland. Louis sought an absolute divorce, alimony, a monetary award based on marital property, and other relief.

Charlotte responded with a motion to dismiss the complaint on two grounds: (1) insufficiency of process, and (2) lack of subject matter jurisdiction. The former was based on the assertion that she never received a copy of the summons. The latter defense was grounded on the averment that Louis had not been a resident of Maryland for more than one year prior to the filing of the complaint, "as required by the Annotated Code of Maryland, Family Law Article, 7–101(a)." In response to this motion, Louis produced affidavits from a secretary in his attorney's law firm and a private process server. The secretary swore that she had stapled together a copy of the summons, the complaint, and Louis's financial statement and given the package to the process server. The process server attested that he had received the package from the secretary and served it, including the summons, on Charlotte at her home in Ocean City, Maryland.

The court, which was prepared to grant Charlotte's motion without a hearing, reluctantly conducted a non-evidentiary hearing on April 24, 1992. Through counsel, Charlotte argued principally the first ground of her motion—that she had not been served with a copy of the summons and that the court therefore had not acquired *in personam* jurisdiction over her. Alternatively, she pressed the second argument, contending that Louis had moved into Maryland for the sole purpose of taking advantage of this State's more favorable divorce law, from his point of view. She claimed (1) that the parties had lived in Virginia for most of their marriage, (2) that Louis had deserted her in Virginia on October 6, 1990, (3) that on November 4, 1990, she purchased a lottery ticket in Maryland and, on November 10,

learned that she had won $7,000,000, and (4) that, after learning about his wife's good fortune and the fact that, in Maryland, marital property is determined as of the time of divorce rather than as of the time of separation, as is the case in Virginia, Louis moved to Maryland for the sole purpose of seeking a monetary award based on her lottery prize.

In response, Louis contended that he was in the construction industry, which was in a state of depression, and that he moved to Maryland to obtain employment. He said that he was currently employed in a large construction project in Baltimore, that he had obtained a Maryland driver's license, and that he had registered to vote in Maryland. He stated that he and Charlotte had *not* separated on October 6, as she contended, and that he had documentary proof of their living together thereafter. He asserted that it was after he learned that Charlotte had commenced an adulterous affair in Maryland and had purchased a condominium in Ocean City, where the adultery occurred, that he brought suit in Maryland. As was the case with Charlotte's assertions, this information was conveyed mostly by counsel, with Louis himself providing a few unsworn statements.

Notwithstanding that none of this was through admissible evidence, the court made clear its belief that Louis had moved to Maryland not because of any occupational opportunity but solely because of Charlotte's lottery winning. In comments from the bench and later in a written memorandum, it declared that Louis did not have a "bona fide residence" in Maryland and had not been a Maryland resident for more than one year prior to filing the complaint. The court made no finding as to whether Charlotte was served with a copy of the summons or what the effect would be if she had not been so served. It dismissed the complaint solely because of its conclusion that Louis was not a "bona fide" resident of Maryland.

Before turning to the main issue in the appeal, we shall consider briefly Charlotte's contention that the dis-

missal was proper because she never received a copy of the summons. We consider the issue but cannot resolve it. The fact is that there was conflicting "evidence" before the court on that question—Charlotte's affidavit that the summons was not with the material served on her and the two affidavits supplied on behalf of Louis attesting that the summons *was* served on her. The circuit court did not resolve that conflict, and it is beyond our ability to resolve it. We cannot, therefore, affirm the dismissal on that ground.

It does not appear that there is currently any general Maryland statute specifically requiring that either a plaintiff or a defendant in a divorce action be a Maryland resident. Md.Code Cts. & Jud.Proc. art., §§ 6–102 and 6–103 set forth the conditions under which a court may exercise jurisdiction over a non-resident defendant, but they do not speak to any required residence on the part of the plaintiff. Sections 6–201(a) and 6–202(1) of that article specify which county an action may be brought in, but, as we shall see, they are in the nature of venue provisions, not residence requirements. Md.Code Fam.Law art., § 7–101(a) does deal with that subject, and specifically with respect to divorce cases, but unfortunately, it deals with the matter only in part. It provides:

"If the grounds for the divorce occurred outside of this State, a party may not apply for a divorce unless 1 of the parties has resided in this State for at least 1 year before the application is filed."

To the best of our knowledge, that is the only existing statute affirmatively stating a residence requirement for divorce actions. It clearly requires a one-year period of residence on the part of one of the parties if the ground occurs outside the State, but that is all it says. Inferentially, if the ground occurs within the State a one-year residence is *not* required. Whether, in that circumstance, there is *any* residence requirement, even at the time the complaint is filed, is not addressed. That, however, is the issue we must now resolve.

We begin our analysis with 1841 Md.Laws, ch. 262—the law that first empowered the equity courts of Maryland to grant divorces.[1] In § 1 of that Act, the Legislature specified that the complaint must be brought in the court of the county where the defendant resided or, if the defendant was a non-resident, in the county where the plaintiff resided. The forerunner of § 7–101(a) was in § 5 of the Act, which provided that "no person shall be entitled to make application for a divorce under this act where the causes for divorce occurred in another State, unless such person so applying shall have resided within this State for two years...."

Four years later, by 1845 Md.Laws, ch. 330, the Legislature, recognizing that "instances may occur in which it would be conducive to the interest and convenience of the party petitioning, to have the right to petition in the county in which he or she may reside," amended the law to allow the complaint to be brought "either in the court of the county where the [plaintiff] may reside, or in the court of the county where the [defendant] may reside, at the option of the applicant or petitioner." No change was made with respect to the special two-year requirement which, as noted, applied only to the plaintiff.

Both parts of this statute, then split into separate sections and codified, respectively, as §§ 35 and 38 of art. 16 (1888 Md.Code), were construed in *Adams v. Adams*, 101 Md. 506, 61 A. 628 (1905). There, as here, the parties had their marital home outside of Maryland (in Delaware), one of the parties (the husband in that case) committed adultery in Maryland, and the other (the wife) eventually moved to Maryland and brought suit for divorce here. The circuit court dismissed the complaint on the ground that "[t]here were no marriage relations in Maryland to which the adultery could refer, and as the husband is not a resident of Maryland ... the wife should either bring her suit in

---

1. Until the power was specifically abrogated by art. III, § 21 of the 1851 Constitution, the General Assembly granted divorces.

Delaware or reside in this State for two years before bringing suit here." *Id.* at 507, 61 A. 628.

The Court of Appeals reversed. It first concluded that, because the adultery occurred in Maryland, the two-year residence requirement did not apply. Turning then to the broader question of whether *any* period of residence was required, the Court stated, at 508, 61 A. 628:

"Construing the sections above as parts of an orderly and harmonious system we see they were enacted for the purpose of giving redress for conjugal wrongs only *to* those who, as residents of this State are under the protection of its laws, or *against* those who, as such residents, are amenable to our laws. *Dorsey v. Dorsey*, 7 Watts, 350. This policy recognizes 'the well-settled principle of *general* law upon this subject, that the tribunals of a country have no jurisdiction over a cause of divorce, wherever the offense may have occurred, if neither of the parties has an actual *bona fide* domicil within its territory.' *Ditson v. Ditson*, 4 R.I. 93."

That, in turn, led the Court to the final question of whether the wife was a bona fide resident of Maryland when she filed the complaint. At the time, the law was that "during coverture the wife's domicil must necessarily in all cases be that of the husband," *id.* at 509, 61 A. 628, and the argument was made that, as the husband was domiciled in Delaware, that was her legal domicile as well. This too the Court rejected, concluding that, when the wife was deserted by her husband, she necessarily had to establish a new domicile and that, in the particular case, she had established that new domicile in Maryland.

The Court has not had the occasion to revisit this question, of whether jurisdiction rests on a finding that at least one of the parties has a bona fide domicile in Maryland, since *Adams* —at least in an adjudicatory context. We note, however, that in its first (1958) promulgation of the Chapter 1100 Rules governing Special Proceedings, the Court adopted Rule 1190 a.1, declaring that "[a] bill of divorce shall be filed in a county where the plaintiff resides,

or where the defendant resides, *is regularly employed or has a place of business."* (Emphasis added.) That Rule, which remains intact as current Rule S70 a, raises the prospect that a complaint may be filed in a Maryland court, although neither party is a resident of this State, if the defendant is regularly employed or has a place of business here. That prospect is, to some extent, assisted by the fact that, in enacting the Courts and Judicial Proceedings article in 1973, the Legislature repealed the then-existing version of the 1845 Act (art. 16, § 22 (1957 Md.Code)) and consolidated it into §§ 6–201(a) and 6–202(1) of the new article. Section 6–201(a) states generally that "a civil action shall be brought in a county where the defendant resides, carries on a regular business, is employed, or habitually engages in a vocation." Section 6–202(1) adds that a divorce action may also be brought in the county where the plaintiff resides.

The question is thus raised whether these legislative changes, coupled with the promulgation of what is now Md.Rule S70, have sapped the vitality of the Court's clear, fixed pronouncements in *Adams v. Adams.* We conclude that they have not.

The statute before the *Adams* Court had two aspects. The specific direction concerning the county in which the action should be brought was essentially a venue provision. The cumulative effect of that venue provision, however, was necessarily to require that one of the parties reside in a Maryland county, and that, in turn, was declaratory of a more fundamental principle that the Court regarded as jurisdictional in nature. That principle is more universally recognized; it has a Constitutional underpinning and remains firmly intact.

In *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), the Supreme Court considered whether an Iowa statute requiring that a petitioner in a divorce action be a resident of the State for at least a year was constitutional. Holding that it was, the Court gave, among other reasons, the fact that Iowa had an interest in assuring that its divorce decrees would be given full faith and credit by other

States, and that, "[f]or that purpose, this Court has often stated that 'judicial power to grant a divorce—jurisdiction, strictly speaking—is founded on domicil.'" *Id.* at 407, 95 S.Ct. at 561, citing *Williams v. North Carolina,* 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945); *Andrews v. Andrews,* 188 U.S. 14, 23 S.Ct. 237, 47 L.Ed. 366 (1903); *Bell v. Bell,* 181 U.S. 175, 21 S.Ct. 551, 45 L.Ed. 804 (1901). This led the New York Court of Appeals, in *Carr v. Carr,* 46 N.Y.2d 270, 413 N.Y.S.2d 305, 307, 385 N.E.2d 1234, 1236 (1978), to declare:

> "A basic maxim in this area, not to be disputed at this late date, is that divorce jurisdiction may be exercised only when at least one of the parties to the marriage is domiciled in the State.... So fundamental is the domicile requirement that it is a constitutional prerequisite to the recognition of a divorce decree under the full faith and credit clause...."

*See also Auman v. Auman,* 134 Ariz. 40, 653 P.2d 688 (1982); *In re Marriage of Hanlon,* 116 Ill.App.3d 157, 72 Ill.Dec. 128, 452 N.E.2d 60 (1983). The established rule is well stated in 24 Am.Jur.2d, *Divorce and Separation,* § 238:

> "It is commonly held that an essential element of the judicial power to grant a divorce, or jurisdiction, is domicil. A court must have jurisdiction of the res, or the marriage status, in order that it may grant a divorce. The res or status follows the domicils of the spouses; and therefore, in order that the res may be found within the state so that the courts of the state may have jurisdiction of it, one of the spouses must have a domicil within the state." [2]

■ In tacit recognition of this principle, the parties acknowledged at oral argument that, for jurisdiction to

---

**2.** The section goes on to note that, although the Legislature of a State is not precluded from making "mere residence," rather than domicile, the basis of jurisdiction, decrees entered upon mere residence alone would not be entitled to full faith and credit in other States.

exist in a Maryland court, at least one of them must have been a "bona fide" resident of this State when the complaint was filed. They acknowledged further that "bona fide" residence, for the purpose of an action for divorce, is the equivalence of domicile and that, in this case, that depends entirely on Louis's status. No claim was made that Charlotte was domiciled in Maryland. We think these acknowledgments accurately reflect the law. The promulgation of what is now Md.Rule S70 and the substitution of Cts. & Jud.Proc. art., §§ 6–201(a) and 6–202(1) for the language of the 1845 Act, we conclude, modified only the venue aspects of the 1845 law and did not serve to alter the holding and relevant pronouncements of the *Adams* Court. We do not believe that either the Legislature, in enacting the Courts and Judicial Proceedings article, or the Court of Appeals, in promulgating what is now Md.Rule S70, intended to permit a Maryland court to grant a divorce unless at least one of the parties was a Maryland resident at the time the action was filed, and thus risk non-recognition of its divorce decrees by other States. We also agree that, in this context, residence, or bona fide residence, means domicile. *Harrison v. Harrison,* 117 Md. 607, 612, 84 A. 57 (1912).

■ The concept of domicile has been defined many times by the Court of Appeals. Among the recent cases are *Comptroller v. Haskin,* 298 Md. 681, 472 A.2d 70 (1984); *Toll v. Moreno,* 284 Md. 425, 397 A.2d 1009 (1979); *Dorf v. Skolnik,* 280 Md. 101, 371 A.2d 1094 (1977); and *Bainum v. Kalen,* 272 Md. 490, 325 A.2d 392 (1974). The controlling factor in determining domicile is the person's intent, which "is best shown by objective factors, the two most important factors being where a person actually lives and where he votes." *Comptroller, supra,* 298 Md. at 691, 472 A.2d 70. Among other factors to be examined are where he pays taxes, where he receives mail, where his personal belongings are, what State has issued his current driver's license, where he banks. *See Dorf v. Skolnik, supra,* 280 Md. 101, 371 A.2d 1094.

■ The question, then, as to subject matter jurisdiction, is whether, applying these standards and factors, Louis is a Maryland resident. The uncontradicted "evidence," taken from the assertions in the pleadings and at the hearing, is that he is, and was when he filed the complaint. He lives here, he works here, he has a Maryland driver's license, and he is registered to vote here. Inferentially, his personal effects are here and, to the extent he earns sufficient income from his employment, he pays taxes here. Aside from his joint ownership of the Virginia property, there is no indication that he has any continuing connection with Virginia or any other State. To conclude, on this record, that he is not a Maryland resident is not only error, but clear, patent, obvious error. *Compare Willingham v. Willingham*, 162 Md. 539, 160 A. 280 (1932).

The court, as we indicated, seemed concerned that Louis had moved here solely to take advantage of this State's more favorable divorce law. That may well be so, and if it is so, it is unfortunate. But jurisdiction does not hinge on *why* he moved here, only *whether* he moved here, which he clearly did, and whether, at present, he intends to remain here for the foreseeable future, which it appears he does. We would indeed be commencing a slide down a slippery slope if the courts, in this age of mobility, were obliged to determine, as a jurisdictional prerequisite, *why* a person has changed residences. People no doubt move for all sorts of reasons which seem important to them, if not to others, and prominent among those reasons would seem to be economic advantage, including advantage arising from the differences in laws from one State to another.

For these reasons, we conclude that the court erred in dismissing the complaint on jurisdictional grounds, and we therefore remand the case for further proceedings. In doing so, we are not to be regarded as championing Maryland's jurisdiction over that of Virginia or of entering into any kind of inter-State rivalry between the two States. We regard these parallel proceedings as unfortunate. The fact is, however, that jurisdiction does lie in this State.

JUDGMENT REVERSED; APPELLEE TO PAY THE COSTS.