## WEINTRAUB v. MURPHY.

Court of Appeals of Kentucky.
Dec. 14, 1951.

A. J. Jolly, Newport, for petitioner.

Morris Weintraub, Newport, for respondent.

MOREMEN, Justice.

This is an original action in this court by which petitioner, Bertha Berger Weintraub, requests that a writ issue against respondent, Hon. Raymond L. Murphy, as Judge of the 17th Judicial District prohibiting him from proceeding in a divorce case. This is the second appearance of this action upon our docket, and the facts of the case and the preliminary ruling of the court may be found in Weintraub v. Murphy, Ky., 240 S.W.2d 594. By that opinion, permission was given to the parties to take proof concerning whether Daniel J. Weintraub had been a resident of Baltimore, Md., or whether he had been a resident in the State of Kentucky sufficient to confer jurisdiction upon the Campbell Circuit Court. Proof has been taken and we are presented with the question of whether or not Capt. Daniel J. Weintraub of the U. S. Navy acquired a residence at any place other than Newport, Ky., where he resided at the time he enlisted.

In Radford v. Radford, 82 S.W. 391, 392, 26 Ky. Law Rep. 652, we held that a person in the Armed Services of the United States does not lose his actual or legal residence because he is absent from the state for long periods, saying:

"Being in the naval service of his country, he is necessarily out of his native state whenever his duty calls him. He obeys the orders of his superiors, and goes when and where they direct. It has never been the policy of the law to add to the burdens of one serving his country in its army or navy the loss of residence in his native state from his constrained and involuntary absence therefrom. Such a one cannot be said, in any proper sense of the term, to have a residence anywhere other than the home he has left, since he has no choice as to where he goes, the time he can remain, or when he shall return. In order to gain either an actual or legal residence, there is, of necessity, involved at least the exercise of volition in its selection, and this cannot be affirmed of the residence of either a soldier or sailor in active service."

In St. John v. St. John, 291 Ky. 363, 163 S.W.2d 820, 823, we held that it was possible for a soldier to acquire a legal residence in a locality to which he had been assigned, and placed emphasis upon the animus that guided him, saying: "In the usual and ordinary case involving domicil, the one whose domicil is in question is not a witness and inferences from proven facts and circumstances become all important but where, as here, the one whose domiciliary status is in question gives positive uncontradicted testimony as to his intention and the proven facts and justifiable inferences therefrom do not render such testimony incredible, it should be given due consideration and weight. We think there was nothing in the evidence to discredit appellant's testimony and that of the witness referred to and render such testimony unworthy of belief."

Capt. Weintraub testified positively that through the years he had considered Kentucky his residence and that he had no intention at any time of establishing a domicile elsewhere. A résumé of his actions during the years is necessary in order to determine whether the facts render his testimony incredible.

In 1922, Daniel Weintraub lived with his parents in Newport and attended school in Cincinnati. He enlisted in the Navy and was sent to Hampton Roads, Va., for boot training. The following year he took a competitive examination and was appointed to the Naval Academy. While at Annapolis, he met his wife, a native of Baltimore, Md. He was graduated in 1927, and two years later he married in Baltimore, Md. Prior to his marriage, he had been assigned to ship duty out of Norfolk and then was sent to Nicaragua, and after his marriage he returned there. His wife lived with her parents in Baltimore. He was soon ordered to Pensacola, Fla., where he lived with his wife in a rented apartment until 1930, when he was ordered back to sea. Mrs. Weintraub returned to Baltimore and rented an apartment on North Charles St. where a child was born. During 1930, he was at sea and his wife gave up the apartment and lived with her parents. In the fall of 1931, he was ordered to the West Coast and his family lived at various times in San Diego, Long Beach, and San Francisco, until they returned to Baltimore in April 1933, because of an approaching accouchement. In May 1933, he was assigned to ship duty at San Pedro, and soon was joined by his wife and children. In 1934, he went to Newport, R. I., but was soon stationed at the Naval Air Base at Lakehurst, N. J., where his wife joined him several months later. A house was rented in New Jersey and they lived there until 1937, although during part of this time he served in Maryland. In 1937, they were back again on the West Coast where they lived until 1940, although during this perod he was at sea for long stretches; then back to Lakehurst until 1942, when he was ordered to Elizabeth City, N. C. His family remained in Lakehurst, N. J., for a while, then moved to Toms River, N. J., although for a brief spell they stayed in Elizabeth City. In February 1944, he was ordered to sea duty in the South Pacific and during this time his family lived at Toms River and at Beechwood, N. J. When he returned from his Pacific Command in 1946, he lived for a while at Norfolk, Va., and his wife continued to reside in New Jersey. It was

about this time that differences arose between the parties although they lived together in Earle, N. J., for about a year until he entered St. Albans Hospital in New York from which he was discharged in August 1947. Thereupon he was ordered to Great Lakes, Illinois. She moved to Baltimore in June 1948, and when he visited them, he stayed at a hotel. In June 1949, his family came to the Great Lakes Naval Station and he saw them occasionally, but, by this time, the differences between them were even greater.

When Capt. Weintraub's positive statement that he did not intend to establish a legal residence at any of the above places is considered with the bare statement of facts concerning his many posts of duty and the accompanying change of abode of his family, we are forced to the conclusion that he established no new legal residence during his tenure of service. However, he committed one act which, unexplained, might have been strong evidence of an intention to claim New Jersey as his residence. In August 1949, he filed a complaint in the Superior Court of New Jersey seeking a divorce, in which it was alleged that for more than two years next preceding the commencement of the action, he had been a bona fide resident of that state. The defendant filed an answer in which she admitted the residence of the plaintiff. However, the suit was not heard because service had not been perfected in accordance with the law of that state. Capt. Weintraub explains this action by stating that he gave all the facts concerning his manner of living to his attorney and told him that he had been at Great Lakes for almost two years and was assigned at present to a base in Texas, and that the attorney advised him he thought it was correct for him to file suit in that state.

We are of opinion that this act alone is not sufficient to deprive him of his legal residence in Kentucky. It has long been a difficult subject for lawyers and for the courts to determine what character of residence is sufficient for divorce purposes and since there is a showing that Weintraub acted in good faith, we are not inclined to hold that he is estopped by the pleading in that case.

Therefore, the petition for a writ of prohibition is denied.