## HAWKS *v.* GOTTSCHALL, ᴇᴛ ᴀʟ.

[No. 400, September Term, 1964.]

148

*Decided January 10, 1966.*

The cause was argued on 9/21/65 before PRESCOTT, C. J., and HAMMOND, MARBURY, OPPENHEIMER and BARNES, JJ.; and reargued on 12/6/65 before PRESCOTT, C. J., and HAMMOND, HORNEY, MARBURY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*William S. James* (on both arguments), with whom was *Charles H. Reed, Jr.,* on the brief, for appellant.

*John D. Connelly* (on both arguments), with whom was *Edward T. Conroy* on the brief, for appellees.

MARBURY, J., delivered the opinion of the Court.

After a jury trial held on October 21, 1963, the appellees herein (Irving B. Gottschall, his wife Lois A. Gottschall, and their infant son Brad I. Gottschall) were awarded judgments totaling $7,400 against the appellant, Edgar Paul Hawks, arising out of an automobile accident occurring in Harford County,

Maryland, on March 31, 1961. Because the judgment debtor did not, at the time of the accident, carry any insurance which would be liable for payment of the judgments and because the debtor did not have property or other assets from which the judgments could be collected, the appellees, claiming to be residents of this State, petitioned the Circuit Court for Harford County for payment of the judgments (less $100 for each petitioner) by the State Unsatisfied Claim and Judgment Fund Board. The Board resisted payment on the grounds that the petitioners had failed to establish legal residence in Maryland, and that they were at the time of the accident residents of Pennsylvania, a non-reciprocal state, and thus not "qualified persons" within the meaning of Code (1957), Article 66½, Section 150 (g). A hearing was held by Judge Dyer on June 23, 1964, at which testimony was taken in order to ascertain whether the petitioners were "qualified persons" under this section of the Maryland uninsured motorists statute. The nominal appellant Hawks has appealed pursuant to Section 156 of the same Article from Judge Dyer's order of September 19, 1964, finding in favor of the petitioners, and ordering payment out of the Fund.

Article 66½, Section 150 (g), *supra,* defined a "qualified person" as (*inter alia* not involved herein) a "resident of this State." Recent Maryland cases have made it clear that a "resident of this State" as used in the above definition, means a person who has acquired a domiciliary status in the State of Maryland. *Rumbel v. Schueler,* 236 Md. 25, 202 A. 2d 368; *Walsh, Adm'r v. Crouse,* 232 Md. 386, 194 A. 2d 107; *Maddy v. Jones,* 230 Md. 172, 186 A. 2d 482. The sole question to be resolved on this appeal is whether appellee Irving I. Gottschall was a domiciliary of the State of Maryland at the time of the accident (March 31, 1961), since the appellees concede that the domicile of the wife, Lois A. Gottschall, is that of her husband, and the domicile of their infant son, Brad I. Gottschall, is that of his father.

Irving B. Gottschall, a Chief Warrant Officer in the United States Army, was born in Reading, Pennsylvania, where he lived with his parents until he first entered the Army in 1942, at the age of eighteen. Following his discharge from the ser-

vice in 1945, he returned to Reading, Pennsylvania, where he lived until he re-entered the Army in 1951. During this second enlistment, Gottschall served in Georgia for approximately one and one-half years, in Texas for about a year, and in Germany for two years. In February 1956 he was transferred to Aberdeen, Maryland, and in December of that same year was again transferred to Fort Meade, Maryland. From December 1956 to the date of the hearing, Gottschall had been continually stationed at Fort Meade, and was living in his own trailer, situated on rented property, near Upper Marlboro, Maryland. C.W.O. Gottschall testified at the hearing that he expected to be in the Army for about two and one-half more years, at which time he expected to retire with twenty years of service.

While stationed in Maryland Gottschall did not completely disassociate himself from his native Pennsylvania. He retained his Pennsylvania driver's license, kept his car registered in Pennsylvania, and used Pennsylvania license plates on that car. His Army records showed that his "home of record" was Pennsylvania, and he never had those military records changed, although this might easily have been done. In 1957, one year after being transferred to Maryland, he applied for and received a Korean war bonus given by the State of Pennsylvania to Pennsylvania residents who had been in the army during the Korean conflict. Moreover, when filling out the requisite Maryland Department of Motor Vehicle accident report, following the accident with the uninsured motorist Hawks, Gottschall gave 501 Lancaster Avenue, Reading, Pennsylvania, as his address.

At the hearing Gottschall explained that he had listed Pennsylvania on his army records as his "home of record" because it was the place from which he had entered the service and he had never changed that record because Pennsylvania levies no income tax upon its citizens and it was thus possible to avoid Maryland State income taxes. Moreover, he testified that by keeping Pennsylvania as his home of record he could benefit by a Pennsylvania statute which gives free automobile tags and automobile registration to servicemen from that State, as well as escape the payment of a Maryland excise tax on his car. He further explained that he had given 501 Lancaster Avenue, Reading (actually the address of his mother-in-law), as his ad-

dress on the accident report because "it would be pretty rough to explain the Maryland address with a Pennsylvania tag on the car."

From Gottschall's testimony it is difficult to ascertain when he formed an intention to reside permanently in Maryland. His testimony is unequivocal that as of the time of the hearing his intention to stay in Maryland was clearly formed. However, he testified at one point that at the time of the accident he didn't plan to return to Pennsylvania or to live permanently in any other state and that he had plans of living in Maryland, but those plans were at that time not definite. He further testified that he and his wife formed a definite intention to stay permanently in Maryland when they decided that they would like to purchase some waterfront property along the Severn River, somewhere close to Fort Meade. Although no waterfront property had, as of the date of the hearing, been purchased, Gottschall testified that intent to purchase and concomitant intent to stay permanently in Maryland had been formed approximately two years before the hearing which was held more than three years after the accident. One reason that he gave for desiring to live along the Severn and close to Fort Meade was that he had suffered a heart attack in 1959, and he desired to live close to the Fort's medical facilities during the years of his retirement.

Mrs. Lois A. Gottschall testified that she had come to Maryland in 1956 along with her husband. In 1960 she had registered to vote in Prince George's County, Maryland, and in 1962 she had served for a few days as a judge of elections for that county. She also reiterated her husband's testimony to the effect that in 1963 he had received orders to be transferred from Fort Meade to a post in Connecticut, but that he had been successful in getting those orders changed, the practical effect of which was that he would be stationed in Maryland until his retirement from the service. Mrs. Gottschall's testimony was unequivocal that as of the time of the accident she intended to live permanently in Maryland.

The language used in the case of *Walsh, Adm'r v. Crouse, supra,* is apposite to the question presented on this appeal. In that case, Judge Hammond, speaking for this Court, at page 388 of 232 Md. said:

"A domicile continues until a new domicile is acquired. *Hall v. Morris,* 213 Md. 396, 404. A person does not acquire a domicile of choice by any act done under legal or physical compulsion and, therefore, a soldier who must go and live in a place assigned to him ordinarily does not acquire a domicile in such place. Restatement, *Conflict of Laws,* Sec. 21; 17 Am. Jur. *Domicile,* Sec. 40.

"The mere fact of entry into military service is not enough to show an intention to abandon a domicile and acquire a new one, it being presumed, unless the contrary be shown, that the existing domicile is retained. *Alder v. Hudson,* (Super. Ct. Del.), 106 A. 2d 768, and cases cited; *cf. Shenton v. Abbott,* 178 Md. 526, 530. See also *Teague v. District Court* (Utah), 289 P. 2d 331. * * *."

The appellees here have not shown sufficient evidence that Gottschall had intended to acquire a new domicile in Maryland as of the date of the accident with Hawks. In their brief, the appellees argue that Gottschall began to think of Maryland as a permanent rather than his temporary "abiding" place some time after his August 1959 heart attack and that this intent had nineteen or twenty months to "crystalize" before the accident occurred. The short answer to this argument is that if such an intent did "crystalize" before the accident, Gottschall's own testimony does not reveal it. From Gottschall's successful avoidance of the transfer to Connecticut a possible (although decidedly not necessary) inference could be drawn that as of that date he intended to make Maryland his permanent home. However, this avoidance only sheds slight illumination on the state of Gottschall's intention two years earlier, at the time of the accident. Moreover, Lois A. Gottschall's intent to stay in Maryland, as of the time of the accident, or her ability to vote in this State has no bearing on her own domicile, or her husband's domicile of choice as of the date of the accident, because her domicile followed that of her husband. See *Rumbel v. Schueler, supra,* at page 28.

In Judge Dyer's lower court opinion the case of *Maddy v. Jones, supra,* is cited for the proposition that "the Unsatisfied

Claim and Judgment Fund Law is remedial legislation which should be construed liberally in order to effectuate its beneficial purpose, * * *." However, in that same case we went on to quote with approval at pp. 177-78 the case of *Parrot v. Chiselko*, 180 A. 2d 710, 712, (N. J. Super., App. Div., 1962), where it was said:

> " 'The liberality of construction accorded to the statute accents the scope and purposes of the enactment as social legislation, but *affords no substitute for proof or evidence necessary for compliance with its terms or conditions*. See Szczesny v. Vasquez, 71 N. J. Super. 347, 358-359, 177 A. 2d 47 (App. Div. 1962). The admonition that due regard must be given to the protection of the Fund, gives recognition to the fact that it is derived from levies legislatively imposed on registrants of motor vehicles, insured and uninsured, and insurers authorized to write automobile liability insurance in this State.' " (Emphasis added in 230 Md. at p. 178.)

From the evidence produced at the hearing, we can find nothing that Gottschall had done prior to the 1961 accident which would distinguish him from any other soldier who, during the course of his military career, happens to become stationed in Maryland but who still retained his domicile in another state. Being a domiciliary of Pennsylvania Gottschall had a perfect right to avail himself of all the benefits to servicemen afforded by that state and to avoid the less attractive incidences of becoming a Maryland resident, but when adversity strikes he cannot retroactively change that domicile to come within the purview of the Maryland statute.

We, therefore, conclude that Gottschall was not a person qualified to claim against the Fund.

*Order reversed, with costs.*