David Tracy HILBURN *v.* Shelly C. HILBURN

85-81                                           696 S.W.2d 718

Supreme Court of Arkansas
Opinion delivered September 30, 1985

*Raymond C. Smith*, for appellant.

*Matthews, Campbell & Stephens*, by: *David R. Matthews*, for appellee.

GEORGE ROSE SMITH, Justice. This is a divorce case. In July,

1979, the parties eloped and were married in West Siloam Springs, Oklahoma. At that time David, aged 20, had just completed a three-year enlistment in the army and was living with his parents in Bentonville, Arkansas. Shelly, 16, was still in high school and lived with her parents in nearby Lowell. After a month or so in Colorado the couple returned to Arkansas and lived here for about nine months, with David then re-enlisting in the army at Little Rock.

The couple next lived for two years in Maryland, where David was stationed at Fort Meade. During that time their son, David, Jr., was born in a military hospital in Washington, D.C., in September 1980. In May, 1982, David was transferred to West Germany, where Shelly and the child joined him in August. Marital difficulties had already begun and continued there. In May, 1983, without David's prior knowledge, Shelly brought the child to Arkansas. David countered by coming to Arkansas in June, taking the child without Shelly's consent, and returning to West Germany. A few days later, on June 24, 1983, Shelly brought this suit for divorce in Benton County, Arkansas, where she was living. In March, 1984, Shelly went to Germany and stayed a few weeks. There she served her complaint on David and visited David, Jr., at times. She returned alone to Arkansas in late April.

The trial court held three hearings, in May, July, and August, 1984. David obtained an assignment to temporary duty in North Carolina so he could participate in the trial. Both parties and their witnesses testified. The court's final decree awarded Shelly a divorce and custody of the child, fixed child support at $40 a week, and specified visitation privileges for David. The appeal comes to us under Rule 29(1)(c).

■■ In the first of three arguments for reversal David questions Arkansas's jurisdiction to grant the divorce. We see no real doubt about our jurisdiction. Both parties were residents of Arkansas when they married. Arkansas was also their last matrimonial domicile before David entered the army. His temporary assignments did not affect his own domicile, which was either Arkansas or Florida. *Buck* v. *Buck*, 207 Ark. 1067, 184 S.W.2d 68 (1944). Still less would the military transfers affect Shelly's domicile, which has continued to be Benton County, Arkansas.

The combination of Shelly's domicile and the matrimonial domicile in Arkansas leaves no doubt about the jurisdiction of the trial court to grant the divorce. Leflar, American Conflicts Law, §§ 222-224 (3d ed., 1977). David, having testified that he will pay child support if so ordered, does not question that part of the decree.

■ The court's jurisdiction to award custody is almost equally clear. Concededly Arkansas is not the child's home state as that term is defined in the Uniform Child Custody Jurisdiction Act, Ark. Stat. Ann. § 34-2702(5) (Supp. 1985), because David, Jr., has not resided here for the requisite six months. Nevertheless, we think it to be in the child's best interest for Arkansas to assume jurisdiction in view of Shelly's significant connections with Arkansas and the availability of evidence here concerning the child's future care and welfare. § 34-2703(a)(2).

Equally important, we emphasize Section 34-2703(a)(4), which confers jurisdiction to decide child custody when "it appears that no other state would have jurisdiction under prerequisites substantially in accordance" with the preceding subsections of Section 34-2704(a). Shelly has been an Arkansan at least since her high school days. As far as the record shows, all four of the child's grandparents still live in Benton County. David's present residence is not clear, but apparently it was in Arkansas during the early months of the marriage.

No other jurisdiction offers comparable contributions to the best interest of the child. The couple's transient residence in Maryland has long since been immaterial. David testified that he lived in Florida from 1973 to 1976, enlisted in the army there in 1976, and has shown Florida as his residence on his military records, but he offered no other pertinent information about possible Florida connections. In West Germany there was a temporary emergency order vesting custody in David, but that proceeding was dismissed by the German court before the hearings in this case. Apparently Germany exercised jurisdiction only to meet an emergency. David testified in August, 1984, that he then had nine more months to serve in Germany and would be returning to the United States on June 25, 1985. His enlistment was to expire five days after that. He is a specialist fifth class in the army and apparently expects to re-enlist. It is not argued that the

West German courts have custody jurisdiction, nor would there be a sound basis for that conclusion. The custody jurisdiction of the Benton Chancery Court, by elimination if not otherwise, appears to be beyond dispute.

Finally, on the merits David argues that there was insufficient corroboration of Shelly's testimony about her ground for divorce. In a contested case like this one the corroboration may be very slight. We find the supporting testimony of Joyce Hastings and of Shelly's mother to be sufficient.

Affirmed.

PURTLE, J., not participating.