635 A.2d 1322

Richard Carroll WAMSLEY, Jr.

v.

Johanna Belinda WAMSLEY.

No. 78, Sept. Term, 1993.

Court of Appeals of Maryland.

Jan. 26, 1994.

Michael Scott Cohen, argued and on brief (W. Bryan Hall and the Law Offices of W. Bryan Hall, on brief), Cumberland, for appellant.

(No argument on behalf of appellee).

Argued before RODOWSKY, McAULIFFE *, CHASANOW, KARWACKI, ROBERT M. BELL, JJ., and MARVIN H. SMITH and CHARLES E. ORTH, Jr., Judges of the Court of Appeals Retired (Specially Assigned).

KARWACKI, Judge.

This case presents the question of whether Maryland courts possess subject matter jurisdiction over a divorce action filed by a member of the armed services who had established a domicile in Maryland prior to entering the service, but who has not lived in Maryland since. Under the factual circumstances of the instant case, we shall answer that question "yes."

---

* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

### I.

Richard Carroll Wamsley, Jr., was raised in Allegany County, Maryland. In 1981, at the age of 17, he joined the United States Navy and left his home of 17 years. He married Johanna Belinda Wamsley on February 23, 1985, in Harrison County, Mississippi, and two children were born of their marriage. After his marriage, Richard was stationed in Norfolk, Virginia for approximately two years, and Sicily, Italy for approximately three years. In 1991, Richard was transferred back to Norfolk, and he lived there with his family until he and Johanna separated on May 26, 1992.

On May 21, 1992, Richard filed a complaint in the Circuit Court for Allegany County seeking a limited divorce from Johanna and custody of their minor children. He alleged as grounds excessively vicious conduct and mental cruelty on the part of Johanna, all of which allegedly occurred while the parties lived in Norfolk. Trial was held on March 9, 1993, at which both parties were represented by counsel. During the trial, the court raised *sua sponte* the issue of the subject matter jurisdiction of the court. Because the grounds for divorce occurred outside of the state, the trial court applied Maryland Code (1984, 1991 Repl. Vol.), § 7–101(a) of the Family Law Article. That section provides:

"(a). *Residence requirement.*—If the grounds for the divorce occurred outside of this State, a party may not apply for a divorce unless 1 of the parties has resided in this State for at least 1 year before the application is filed."

Richard asserts that although he has not actually lived in Maryland since he joined the Navy in 1981, he has remained domiciled in Maryland throughout his naval service, including the year prior to the filing of the complaint. On this basis, he argues that he meets the requirements of § 7–101(a) of the Family Law Article. In support of his contention, he points to several uncontested facts. From 1981 through the time the divorce was filed in 1992, Richard listed his mother's address in Allegany County, Maryland as his "home of record" in Navy records. The Navy consequently withheld Maryland state

income tax from his pay, and Richard filed Maryland state income tax returns each year during that time. Moreover, he maintained his voting registration in Maryland throughout the time in question. He owned three automobiles during the relevant time period, and although he was not stationed in Maryland, all three vehicles were registered in Maryland. Richard further testified that throughout his naval service, he always intended to retain Allegany County, Maryland as his permanent residence.

The trial judge reviewed all of these facts and then discussed what he believed to be the applicable law:

"The presumption of the law is that where a person actually lives is his domicile, though this is a rebuttable presumption. . . .

"My then view . . . is that if the presumption in this State is that where a person personally actually lives is his domicile I cannot construe the State of Maryland as being the domicile for either of these two people. . . . [C]ertainly I recognize the gentleman has made this his place to vote, hasn't changed that, registered cars, pays taxes here. None of these factors it seems overcomes the basic presumption that your domicile is where you live. . . ."

With this view of the law, the trial court ruled that because the parties had not actually lived in Maryland during the year prior to the filing of the complaint, neither party met the residency requirement of § 7–101(a) of the Family Law Article. It therefore dismissed the divorce action for lack of subject matter jurisdiction.

Richard noted an appeal of the dismissal to the Court of Special Appeals. We granted certiorari prior to consideration of the case by the intermediate appellate court, and we shall reverse the judgment of the trial court, 331 Md. 719, 629 A.2d 720.

## II.

Because the alleged grounds for divorce in the case *sub judice* occurred outside the state, the residency requirement

of § 7–101(a) of the Family Law Article must be met before the court may exercise subject matter jurisdiction over the case. *See Adams v. Adams,* 101 Md. 506, 508, 61 A. 628, 629 (1905) (applying the predecessor statute to § 7–101(a)); *Fletcher v. Fletcher,* 95 Md.App. 114, 123, 619 A.2d 561, 564 (1993); 24 Am.Jur.2d, *Divorce & Separation,* § 238, at 336 (1983) ("a court must have jurisdiction of the res, or marital status, in order that it may grant a divorce"). There has been no claim that Johanna resided in Maryland; thus, the subject matter jurisdiction of the court depends on whether Richard has resided in this State within the meaning of § 7–101(a).

■ We have held consistently that "the words 'reside' or 'resident' in a constitutional provision or statute delineating rights, duties, obligations, privileges, etc. would be construed to mean 'domicile' unless a contrary intent is shown." *Bainum v. Kalen,* 272 Md. 490, 497, 325 A.2d 392, 396 (1974). This has been true in the contexts of qualification for voting, *Howard v. Skinner,* 87 Md. 556, 559, 40 A. 379, 380 (1898); eligibility for elected office, *Dorf v. Skolnik,* 280 Md. 101, 116, 371 A.2d 1094, 1102 (1977); *Gallagher v. Board of Supervisors,* 219 Md. 192, 208, 148 A.2d 390, 398 (1959); state income taxation, *Comptroller v. Haskin,* 298 Md. 681, 690, 472 A.2d 70, 75 (1984); *Comptroller v. Lenderking,* 268 Md. 613, 615, 303 A.2d 402, 403–04 (1973); estate probate, *Shenton v. Abbott,* 178 Md. 526, 530, 15 A.2d 906, 908 (1940); eligibility to file a claim against the former Unsatisfied Claim and Judgment Fund, *Hawks v. Gottschall,* 241 Md. 147, 149, 215 A.2d 745, 746 (1966); *Maddy v. Jones,* 230 Md. 172, 179, 186 A.2d 482, 485 (1962); determination of venue for filing a divorce, *Harrison v. Harrison,* 117 Md. 607, 612, 84 A. 57, 58 (1912); and application of full faith and credit to out-of-state divorce decrees. *Walker v. Walker,* 125 Md. 649, 662, 94 A. 346, 352 (1925). We see no reason why our consistent interpretation of the term "resided" should not be equally applicable in the context of § 7–101(a), and in fact, the Court of Special Appeals recently reached that same conclusion. *See Fletcher v. Fletcher, supra,* 95 Md.App. at 120–24, 619 A.2d at 563–65 (reviewing legislative history of § 7–101(a) and its predecessors and

concluding that in the context of that statute, residence means domicile). We must decide, then, whether Richard was domiciled in Maryland for at least one year before the complaint was filed.

## III.

The law governing the determination of domicile is well-established and was summarized succinctly by Judge Smith for the Court in *Dorf v. Skolnik, supra:*

"A person may have several places of abode or dwelling, but he can have only one domicile at a time. Domicile has been defined as the place with which an individual has a settled connection for legal purposes and the place where a person has his true, fixed, permanent home, habitation and principal establishment, without any present intention of removing therefrom, and to which place he has, whenever he is absent, the intention of returning. The controlling factor in determining a person's domicile is his intent. One's domicile, generally, is that place where he intends it to be. The determination of his intent, however, is not dependent upon what he says at a particular time, since his intent may be more satisfactorily shown by what is done than by what is said. Once a domicile is determined or established a person retains his domicile unless the evidence affirmatively shows an abandonment of that domicile. In deciding whether a person has abandoned a previously established domicile and acquired a new one, courts will examine and weigh the factors relating to each place. This Court has never deemed any single circumstance conclusive. However, it has viewed certain factors as more important than others, the two most important being where a person actually lives and where he votes. Where a person lives and votes at the same place such place probably will be determined to be his domicile. Where these factors are not so clear, however, or *where there are special circumstances explaining a particular place of abode* or place of voting, the Court will look to and weigh a number of other factors in deciding a person's domicile."

280 Md. at 116–17, 371 A.2d at 1102–03 (emphasis added). Such "special circumstances" are frequently presented by members of the armed forces. Because they are often moved from place to place under military orders, determining their domicile for purposes of maintaining legal actions can be a difficult task.

We have not yet considered the precise issue before us, i.e., whether one who established a Maryland domicile prior to entering military service but who has not lived in Maryland may retain that domicile. We have, however, previously encountered an analogous situation, i.e., whether one who established an out-of-state domicile prior to entering military service but who has been stationed in Maryland may claim a Maryland domicile. We have considered this situation in the context of a serviceman's claim against the former Unsatisfied Claim and Judgment Fund. *Hawks v. Gottschall, supra,* and *Walsh v. Crouse,* 232 Md. 386, 194 A.2d 107 (1963), both involved members of the United States Army who were involved in automobile accidents while they were stationed in Maryland. In each case, the serviceman claimed Maryland residency for the purpose of asserting a claim against the Unsatisfied Claim and Judgment Fund. We noted in both cases that " '[a] domicile continues until a new domicile is acquired ... [and] [t]he mere fact of entry into military service is not enough to show an intention to abandon a domicile and acquire a new one, it being presumed, unless the contrary is shown, that the existing domicile is retained.' " *Hawks,* 241 Md. at 152, 215 A.2d at 748 (quoting *Walsh,* 232 Md. at 388, 194 A.2d at 108 (citations omitted)). The soldier in *Walsh* enlisted in the Army while he was living in Florida with his mother and stepfather. He was eventually transferred to Fort Meade, Maryland, where the accident occurred. Following his discharge, he immediately left Maryland and moved to Pittsburgh where his mother and stepfather had moved. We found that the record in that case was "devoid of any evidence ... that Crouse intended to abandon his Florida domicile by entering the armed forces, and to acquire a Maryland domicile." *Walsh,* 232 Md. at 388, 194 A.2d at 108. In *Hawks,* by

contrast, such evidence existed, as the claimant had stated that he intended to remain in Maryland and make it his home. His actions belied his stated intent, however. During the time he was stationed in Maryland, Gottschall had retained his Pennsylvania drivers' license, registered his car in Pennsylvania, listed Pennsylvania as his "home of record" on his Army records, and applied for and received a bonus given by the State of Pennsylvania to Pennsylvania residents who had served in the Korean conflict. *Hawks,* 241 Md. at 150, 215 A.2d at 747. Notwithstanding Gottschall's stated intention to establish a Maryland domicile, we determined that he had not abandoned his domicile in Pennsylvania at the time of his accident and could not therefore establish a new domicile in Maryland. *Id.* at 153, 215 A.2d at 749.

■ We see no reason why the same principle at work in *Hawks* and *Walsh* should not be applied to a member of the military who originally established a domicile in Maryland but who has lived elsewhere during his or her service. "[O]f the usual circumstances which are considered under Maryland law to ascertain domicile, no one circumstance will render a person incapable of establishing a Maryland domicile." *Toll v. Moreno,* 284 Md. 425, 433–34, 397 A.2d 1009, 1018 (1979). The fact that members of the military are frequently moved about under military orders will more than explain why an individual occupies a place of abode beyond the state's borders. In the case of members of the military, as in other cases, "the rules for determining domicile may be applied differently in a particular case, [but] the basic thrust thereof is to get the best indication of intent." *Comptroller v. Haskin, supra,* 298 Md. at 691, 472 A.2d at 76. Once a member of the armed forces has established a valid domicile in Maryland, that individual's domicile will continue in Maryland unless the facts of a given case establish an intent to abandon that domicile.[1]

---

1. Our conclusion is in accord with the majority of other states that have considered this issue. *See, e.g., Nora v. Nora,* 494 So.2d 16, 18 (Ala. 1986) (person inducted into military service retains residence in state from which he is inducted until initial residence abandoned); *Hilburn*

## IV.

■ In applying the law to the instant case, we must first determine the standard by which we will review the trial judge's ruling. Our standard of review hinges on whether the judge's ruling was a finding of fact or a conclusion of law. A finding of fact will not be disturbed on appeal unless it is clearly erroneous. Maryland Rule 8–131(c); *Dorf v. Skolnik, supra,* 280 Md. at 117–18, 371 A.2d at 1103. By contrast, the clearly erroneous standard is not applicable to a trial court's conclusion of law based upon its finding of fact. *Heat & Power Corp. v. Air Prods. & Chems., Inc.,* 320 Md. 584, 591, 578 A.2d 1202, 1205 (1990); *Rohrbaugh v. Estate of Stern,* 305 Md. 443, 447 n. 2, 505 A.2d 113, 115 n. 2 (1986); *Davis v.*

---

*v. Hilburn,* 287 Ark. 50, 51, 696 S.W.2d 718, 719 (1985) (temporary military assignments to other states and foreign country did not affect domicile); *In re Marriage of Thornton,* 135 Cal.App.3d 500, 509, 185 Cal.Rptr. 388, 393 (1982) (merely purchasing home near military base, by serviceman, not sufficient to demonstrate intent to acquire domicile if contradicted by other substantial evidence of intent); *Weintraub v. Murphy,* 244 S.W.2d 454, 455 (Ky.1951) (serviceman cannot be said to have any home other than that which he has left, since he has no choice as to where he goes, the time he can remain, or when he shall return); *Gowins v. Gowins,* 466 So.2d 32, 35 (La.1985) (member of military presumed to retain domicile of home state); *Blackwell v. Blackwell,* 606 So.2d 1355, 1358 (La.App. 2d Cir.1992) (serviceman's established domicile does not change merely because of move of physical residence while in service of country); *Blessley v. Blessley,* 91 N.M. 513, 514, 577 P.2d 62, 63 (1978) (domicile of soldier not, in absence of intention to effect a change of domicile, affected by reason of his entering the military); *Zinn v. Zinn,* 327 Pa.Super. 128, 131, 475 A.2d 132, 133 (1984) (serviceman's domicile is presumed not to change from his domicile at time of enlistment, but may change if circumstances show intent to abandon old domicile and establish new one); *Carroll v. Jones,* 654 S.W.2d 54, 55 (Tex.App.1983) (member of armed forces does not acquire new domicile merely by virtue of being stationed in a particular place in line of duty); George H. Fischer, Annotation, *Residence or Domicile, for Purpose of Divorce Action, of One in Armed Forces,* 21 A.L.R.2d 1163, § 13, at 1180 (1952) (practically all authorities agree that military personnel retain a domicile in the state from which they entered the military service and may institute an action for divorce there until the domicile is effectively abandoned and a new domicile established); 25 Am.Jur.2d, *Domicil,* § 39, at 30 (1966) ("where the facts are insufficient to justify a different conclusion, it will be presumed that the 'usual place of abode' is not changed by entry into military service").

*Davis,* 280 Md. 119, 124, 372 A.2d 231, 233, *cert. denied,* 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977).

■ We stated *supra* that an individual's domicile depends on his or her intent, and it is well established that "a person's intention at any particular time is, of course, a question of fact." *Gallagher v. Board of Supervisors, supra,* 219 Md. at 198, 148 A.2d at 393. See also *Comptroller v. Haskin, supra,* 298 Md. at 692, 472 A.2d at 76. Once the intent is established, determination of domicile is a conclusion of law. In this case, it is apparent that the trial judge made findings of fact based upon uncontradicted evidence which support Richard's claim of domicile. Namely, the trial judge found that Richard lived in Allegany County when he entered the Navy, that he listed Allegany County as his "home of record" in his Navy files, that he maintained his drivers' license, voting registration, and automobile registration in Maryland, that he paid Maryland state income taxes, and that he considered himself at all times during his military service to be a Maryland resident. The trial judge's dismissal of the case was based not on a finding that Richard lacked the requisite intent to maintain his Maryland domicile, but on the court's mistaken impression that his intent, as manifested by these facts, was insufficient to "overcome[ ] the basic presumption that your domicile is where you live," a view of the law that is not correct.

As we have explained above, the determination of one's domicile will rest on the individual's objective intent, and although the location of an individual's residence may be a strong indication of intent, it is not necessarily so. In the case of a member of the armed forces who is frequently moved from state to state, "the mere fact of entry into military service is not enough to show an intention to abandon a domicile and acquire a new one," *Walsh, supra,* 232 Md. at 388, 194 A.2d at 108, and the location of such individual's residence is not nearly so important a factor in determining intent as is the individual's choice of voting registration, state income taxes, vehicle registration, etc.

The trial court based its ruling on an erroneous conclusion of law. It did, however, find facts sufficient to support Richard's claim that he intended to retain Allegany County, Maryland as his domicile/residence. We believe that Richard's intent, supported by these facts, established that Richard has continued his domicile in Maryland. The Circuit Court for Allegany County therefore possesses subject matter jurisdiction over the divorce action pursuant to § 7–101(a) of the Family Law Article.

*JUDGMENT VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR ALLEGANY COUNTY FOR FURTHER PROCEEDINGS; COSTS TO BE EVENLY DIVIDED BETWEEN THE PARTIES.*