665 A.2d 1024

Anthony **ROBERTS**, et al.

v.

Steven S. **LAKIN.**

**No. 68, Sept. Term, 1994.**

Court of Appeals of Maryland.

Per Curiam Order Oct. 19, 1994.

Opinion Oct. 10, 1995.

148

Charles C. Roberts, Greenbelt, for appellants.

Torin K. Andrews (Andrews & Associates, Chtd., Patrick M. Connelly, on brief) Rockville, for appellee.

Argued Before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

## ORDER

On September 7, 1994, the Court, on its own motion, issued a writ of certiorari to the Court of Special Appeals in the above-captioned case.

On September 8, 1994, the Court conducted a hearing at which the parties presented arguments in support of their respective positions.

The Court has fully considered the arguments, motions and other pleadings filed in this matter.

NOW THEREFORE, it is this 8th day of September, 1994

ORDERED, by the Court of Appeals of Maryland, that the judgment of the Circuit Court for Montgomery County dated September 2, 1994, ordering that the name of Anthony Roberts be stricken from the primary election ballot for District 14A is hereby stayed and the State Administrative Board of Elections and the Board of Supervisors of Elections of Montgomery County, Maryland are hereby directed to include the name of Anthony Roberts on the primary ballot.

## PER CURIAM ORDER

For reasons to be stated in an opinion later to be filed, it is this 19th day of October, 1994,

ORDERED, by the Court of Appeals of Maryland, that the judgment of the Circuit Court for Montgomery County is reversed; mandate to issue forthwith; costs to be paid by appellee.

ELDRIDGE, Judge.

The issue in this case is whether Anthony Roberts fulfilled the constitutional residency requirements to be a candidate for the House of Delegates from Maryland Legislative District 14A.[1] The dispute over Roberts's eligibility arose in the midst of the 1994 election for members of the House of Delegates. This Court on October 19, 1994, issued an order reversing the circuit court and holding that Roberts had been eligible to run

---

1. Article III, § 9, of the Maryland Constitution provides as follows:
   "**Section 9. Age, citizenship and residence requirements for Senators and Delegates.**
   "A person is eligible to serve as a Senator or Delegate, who on the date of his election, (1) is a citizen of the State of Maryland, (2) has resided therein for at least one year next preceding that date, and (3) if the district which he has been chosen to represent has been established for at least six months prior to the date of his election, has resided in that district for six months next preceding that date.
   "If the district which the person has been chosen to represent has been established less than six months prior to the date of his election, then in addition to (1) and (2) above, he shall have resided in the district for as long as it has been established.
   "A person is eligible to serve as a Senator, if he has attained the age of twenty-five years, or as a Delegate, if he has attained the age of twenty-one years, on the date of his election."

for the House of Delegates from District 14A. We now set forth the reasons for our order.

Both the appellee Steven S. Lakin and the appellant Anthony Roberts were candidates in the 1994 primary election for the Republican nomination for delegate from District 14A. Lakin, believing that Roberts did not satisfy the residency requirements to run for this office, filed on August 28, 1994, in the Circuit Court for Montgomery County a petition for a writ of mandamus and for declaratory relief. Lakin sought a declaration that Roberts failed to meet the minimum constitutional residency requirements for the House of Delegates from District 14A and an order that Roberts's name be stricken from the election ballot. Lakin named as defendants Anthony Roberts, the State Administrative Board of Election Laws, and the Board of Supervisors of Elections of Montgomery County.

The minimum residency requirement for the House of Delegates, set forth in Article III, Section 9, of the Maryland Constitution, is as follows: "A person is eligible to serve as a ... Delegate, who on the date of his election ... has resided in that district for six months next preceding that date." The 1994 general election was held on November 8, 1994. Thus, in order to have been eligible as a candidate for delegate from District 14A, Roberts must have resided in that district from May 8, 1994.

On September 2, 1994, following an evidentiary hearing, the Circuit Court for Montgomery County declared that Roberts did not meet the residency requirement for delegate from District 14A because he was not domiciled in that district as of May 8, 1994. The circuit court issued a writ of mandamus ordering the state and county election boards to remove Roberts's name from the primary election ballot.

Roberts immediately noted an appeal to the Court of Special Appeals and filed in the Court of Special Appeals a motion to stay the judgment of the circuit court pending disposition of the appeal. On September 7, 1994, six days before the primary election, this Court issued a writ of certiorari prior to any proceedings in the Court of Special Appeals. On September 8, 1994, after hearing arguments on the motion for a stay, we granted the motion, ordered a stay of the circuit court's

judgment, and directed the election boards to include Roberts's name on the Republican primary ballot.

In the Republican primary election held September 13, 1994, Lakin lost by 78 votes to the winner, Patricia Faulkner.[2] Roberts placed fourth out of the four candidates in the Republican primary, receiving 100 votes. At first glance, since both Roberts and Lakin lost the primary, it might appear that the case had become moot. Nevertheless, since the margin separating Lakin and Faulkner was less than the number of votes received by Roberts, Lakin theoretically could have won if enough of the 100 votes cast for Roberts had gone instead to Lakin. Thus, the results of the primary election did not render the case moot.

After the submission of briefs and oral argument, this Court, on October 19, 1994, three weeks before the general election, issued the per curiam order reversing the circuit court's judgment.

The underlying facts of this case were presented by Roberts during his testimony at the September 2, 1994, trial in the circuit court. Roberts, the only person to testify, stated that, prior to January 1993, he lived in an apartment on Colgate Way, in Silver Spring, Maryland. This residence was in Legislative District 20. Roberts testified that he began living with his girlfriend at her house on Pamela Drive, in Silver Spring, in January 1993. The house on Pamela Drive was in Legislative District 14A.

Roberts further testified that he had his own set of keys to his girlfriend's house, knew the combination to the alarm system, kept some of his clothing there, and cut the grass. Roberts stated that in December 1993, he formally transferred his church membership from a church in District 20 to one within the boundaries of District 14A. Most importantly, before the critical date of May 8, 1994, and with the express intention of fulfilling the requirements to run for delegate from District 14A, Roberts changed his voter registration to reflect his move to Pamela Drive.

---

**2.** Faulkner went on to defeat Sandra Morse, a Democrat, in the general election held on November 8, 1994. Faulkner received 52% of the votes cast, while Morse received 48%.

While Roberts lived with his girlfriend at the Pamela Drive address, he continued to lease his apartment on Colgate Way through August 1994 and kept his furniture there. Roberts testified that he used the Colgate Way apartment as a business address to meet Maryland clients, as an escape when his allergies to his girlfriend's pets escalated, as a retreat from his girlfriend's daughter with whom he did not always get along, and for its amenities including a pool and a racquetball court. He further explained that his girlfriend's home was fully furnished and, therefore, there was neither room nor any need for his furniture. Additionally, the term of Roberts's lease at the Colgate Way address did not expire until June 1994. After his lease expired, Roberts entered into a month-to-month lease that terminated at the end of August 1994. In August 1994, Roberts took steps to acquire an apartment in District 14A, and on September 1, 1994, he signed a lease for an apartment in District 14A, on Blackburn Lane.

Also in August 1994, Roberts and his girlfriend developed relationship problems, and Roberts began to stay overnight at the Colgate Way address a majority of the time.[3] Nevertheless, during this same period in August 1994, Roberts had the address on his driver's license changed to the house on Pamela Drive and filed a change of address with the post office, listing his new address as the house on Pamela Drive. Upon the termination of the lease on the Colgate Way apartment at the end of August 1994, Roberts moved into the apartment on Blackburn Lane.

At the conclusion of Roberts's testimony, the circuit court determined that Roberts was domiciled at the Colgate Way address in District 20. The trial judge stated that the evidence failed to persuade him that Roberts "had any intent to do anything other than to live as his domicile at the Colgate Way place. [Mr. Roberts] has a bed there. He has a TV

---

**3.** Roberts explained that their relationship difficulty was due to his girlfriend's insistence upon getting married. Roberts stated that he was "not so insistent."

there.... The voter registration thing is kind of a self-serving thing."

As previously mentioned, under Article III, Section 9, of the Maryland Constitution, Roberts must have "resided" in District 14A from May 8, 1994, in order to have been a candidate for the House of Delegates from that district. This Court has expressly held that the word "resided" in Article III, § 9, means "domiciled." *Bainum v. Kalen,* 272 Md. 490, 496–497, 325 A.2d 392, 396 (1974), and cases there cited. This is in accord with our decisions generally that the words "resided" or "resident" in various constitutional and statutory provisions mean "domiciled" or "domiciliary" unless a contrary intent is shown. *See, e.g., Garcia v. Angulo,* 335 Md. 475, 477, 644 A.2d 498, 499 (1994); *Wamsley v. Wamsley,* 333 Md. 454, 458, 635 A.2d 1322, 1324 (1994); *Comptroller v. Haskin,* 298 Md. 681, 690, 472 A.2d 70, 75 (1984); *Toll v. Moreno,* 284 Md. 425, 438–442, 397 A.2d 1009, 1015–1017 (1979); *Dorf v. Skolnik,* 280 Md. 101, 116, 371 A.2d 1094, 1102 (1977); *Comptroller v. Lenderking,* 268 Md. 613, 615, 303 A.2d 402, 403–404 (1973); *Hawks v. Gottschall,* 241 Md. 147, 149, 215 A.2d 745, 746 (1966); *Maddy v. Jones,* 230 Md. 172, 178–179, 186 A.2d 482, 485 (1962); *Rasin v. Leaverton,* 181 Md. 91, 93, 28 A.2d 612, 613 (1942); *Shenton v. Abbott,* 178 Md. 526, 530, 15 A.2d 906, 908 (1940); *Wagner v. Scurlock,* 166 Md. 284, 291–293, 170 A. 539, 542 (1934), and cases there cited.

Judge Smith for the Court set forth the principles for determining domicile in *Dorf v. Skolnik, supra,* 280 Md. at 116–117, 371 A.2d at 1102–1103 (emphasis added):

"[T]he words 'reside' or 'resident' mean 'domicile' unless a contrary intent is shown. A person may have several places of abode or dwelling, but he can have only one domicile at a time. Domicile has been defined as the place with which an individual has a settled connection for legal purposes and the place where a person has his true, fixed, permanent home, habitation and principal establishment, without any present intention of removing therefrom, and to which place he has, whenever he is absent, the intention of returning. The controlling factor in determining a person's domicile is

his intent. One's domicile, generally, is that place where he intends it to be. The determination of his intent, however, is not dependent upon what he says at a particular time, since his intent may be more satisfactorily shown by what is done than by what is said. Once a domicile is determined or established a person retains his domicile at such place unless the evidence affirmatively shows an abandonment of that domicile. In deciding whether a person has abandoned a previously established domicile and acquired a new one, courts will examine and weigh the factors relating to each place. This Court has never deemed any single circumstance conclusive. However, *it has viewed certain factors as more important than others, the two most important being where a person actually lives and where he votes. Where a person lives and votes at the same place such place probably will be determined to constitute his domicile.* Where these factors are not so clear, however, or where there are special circumstances explaining a particular place of abode or place of voting, the Court will look to and weigh a number of other factors in deciding a person's domicile."

With regard to voting or voter registration, "this Court has termed it the 'highest evidence of domicile,'" *Bainum v. Kalen, supra,* 272 Md. at 498, 325 A.2d at 397, quoting *Wagner v. Scurlock, supra,* 166 Md. at 292, 170 A. at 542. Similarly, as to the place of actual residence, we have held that " '[t]he presumption of the law is that where a person actually lives is his domicile,' " *Bainum v. Kalen, supra,* 272 Md. at 498, 325 A.2d at 397, quoting *Harrison v. Harrison,* 117 Md. 607, 615, 84 A. 57, 59 (1912).[4] And in *Comptroller v. Lenderking, supra,* 268 Md. at 619, 303 A.2d at 405, the Court stated:

"Evidence that a person registered or voted is . . . ordinarily persuasive when the question of domicile is at issue.

\* \* \* \* \* \*

---

4. *See Wamsley v. Wamsley,* 333 Md. 454, 463, 635 A.2d 1322, 1326 (1994) (under some circumstances, such as "a member of the armed forces who is frequently moved from state to state," the place of actual residence at a given time has less significance and does not create a presumption of domicile).

"The act of registering, taken together with the fact that Mr. Lenderking lived . . . in Maryland from 1967 until late 1969, gives rise to a rebuttable presumption that he was domiciled in Maryland. . . ."

■ Turning to the uncontroverted evidence in this case, Roberts was registered to vote in District 14A on May 8, 1994, and thereafter. He actually resided in District 14A from January 1993 until at least the 1994 election, except for a short period in August 1994. The period of actual residence at the Colgate Way apartment in District 20 in August 1994 was fully explained by Roberts's testimony that he had relationship problems with his girlfriend. Furthermore, during this very same period in August 1994, Roberts negotiated a lease for the Blackburn Lane apartment in District 14A, filed with the Motor Vehicle Administration a change of address to District 14A for his driver's license, and changed his address with the post office to District 14A.

■ Under our cases, Roberts's actual residence and voter registration in District 14A clearly created a presumption that he was domiciled in District 14A on and after May 8, 1994. The circuit court erred in failing to recognize and apply this presumption.[5]

---

5. The circuit court, instead of recognizing the presumption arising from actual residence and voter registration, discounted the voter registration in District 14A as "a self-serving thing." As earlier indicated, "[o]ne's domicile, generally, is that place where he intends it to be." *Dorf v. Skolnik*, 280 Md. 101, 116, 371 A.2d 1094, 1102 (1977); *Bainum v. Kalen*, 272 Md. 490, 497, 325 A.2d 392, 396 (1974). Under circumstances where one intends his domicile to be in a particular area, and takes the appropriate steps to evidence a domicile in that area, his motive for doing so is ordinarily not pertinent. One may intend to be domiciled in a particular area because of perceived tax advantages, because of the climate, because he wants to run for public office from that area, or for countless other "self-serving" reasons. The fact that the motivation is "self-serving" in no way undercuts the intent shown by various objective factors. Establishing or maintaining a domicile in a specific area in order to run for public office from that area frequently occurs; it is entirely legitimate. *See, e.g., Bainum v. Kalen, supra; Gallagher v. Bd. of Elections*, 219 Md. 192, 148 A.2d 390 (1959); *Rasin v. Leaverton*, 181 Md. 91, 28 A.2d 612 (1942).

Moreover, the other evidence was not sufficient either to rebut the presumption or to show an abandonment of domicile in District 14A. As previously indicated, the trial judge relied heavily on the fact that Roberts left his furniture at the Colgate Way apartment. This was adequately explained by Roberts's testimony that his girlfriend's house on Pamela Drive was fully furnished, that his furniture was not needed there, and that there was no room for his furniture at the Pamela Drive house. In addition, he continued to use the Colgate Way apartment as an office.

The appellee Lakin makes the alternative argument that, if Roberts had established a domicile in District 14A as of May 8, 1994, his spending nights at Colgate Way during August 1994 "indicate[d] an abandonment of Pamela Drive as a residence and domicile." (Appellee's brief at 11). Of course, the issue in a case like this is not whether Roberts was domiciled or abandoned a domicile in a particular dwelling. Rather, it is whether he was domiciled, or abandoned a domicile, in the relevant geographical area. In the present case, the relevant geographical area is District 14A.

The brief period in August 1994, during which Roberts spent most of his nights at the Colgate Way apartment in District 20, does not, under the circumstances, show an abandonment of domicile in District 14A. It was due to relationship problems with his girlfriend rather than a desire to reestablish permanent residence in District 20. Furthermore, during this same period of time, Roberts negotiated a lease for an apartment in District 14A, terminated his lease of the Colgate Way apartment as of the end of August 1994, and notified the Motor Vehicle Administration and the local post office of a change of address to District 14A. Roberts's actions in August 1994 clearly did not constitute an abandonment of his District 14A domicile.

In sum, Roberts had established his domicile in District 14A and was entitled to be a candidate for the House of Delegates from that district.