720 A.2d 1176

Ellen E. STEVENSON, et al.

v.

Eileen B. STEELE, et al.

No. 105, Sept. Term, 1998.

Court of Appeals of Maryland.

Sept. 29, 1998.

Subsequent Opinion Dec. 7, 1998.

Ramon Rozas, Cumberland, for appellants.

Alex Radice, Baltimore, for appellees.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER and CATHELL, JJ., ROBERT L. KARWACKI, Judge (retired), Specially Assigned, and RAYMOND G. THIEME, Jr., Judge, Specially Assigned.

PER CURIAM ORDER.

For reasons to be stated in an opinion later to be filed, it is this 29th day of September, 1998.

ORDERED, by the Court of Appeals of Maryland, that the judgment of the Circuit Court for Allegany County is affirmed; mandate to issue forthwith; costs to be paid by appellants.

ELDRIDGE, Judge.

The issue in this case is whether the trial court correctly determined that Dr. Eileen Steele met the eligibility requirements under the Maryland Constitution to be a candidate for the House of Delegates.

The defendant-appellee, Dr. Eileen Steele, was the Republican nominee for the House of Delegates for legislative district 1C as a result of the primary election held September 15, 1998. The plaintiffs-appellants, Ellen Stevenson, et al., brought suit challenging Dr. Steele's eligibility to serve as a Delegate, claiming that Dr. Steele had not been domiciled in Maryland for the constitutionally required one year minimum period and had not been domiciled in legislative district 1C for

**64**

the constitutionally required six month minimum period.[1] After a two day trial in the Circuit Court for Allegany County, the court on September 25, 1998, held, *inter alia*, that the plaintiffs failed to prove that Dr. Steele was not eligible to be a candidate for the House of Delegates. The plaintiffs appealed, and this Court issued a writ of certiorari prior to any proceedings in the Court of Special Appeals. *Stevenson v. Steele*, 351 Md. 284, 718 A.2d 233 (1998). After oral argument before this Court on September 29, 1998, we issued an order affirming the judgment of the Circuit Court for Allegany County. We now set forth the reasons for that order.

I.

The evidence presented to the circuit court disclosed the following facts. Dr. Steele has spent the majority of her life in Allegany County. Dr. Steele and her husband had managed many rental properties over the years, and most of the properties were located in Allegany County. In 1985, Dr. Steele began teaching in Washington, D.C., and continued to do so until 1995. Dr. Steele's husband was a chiropractor, and his practice was in Allegany County at 42 West Mechanic

---

1. Article III, § 9, of the Maryland Constitution provides as follows:
   "**Section 9. Age, citizenship and residence requirements for Senators and Delegates.**
   "A person is eligible to serve as a Senator or Delegate, who on the date of his election (1) is a citizen of the State of Maryland, (2) has resided therein for at least one year preceding that date, and (3) if the district which he has been chosen to represent has been established for at least six months prior to the date of his election, has resided in that district for six months next preceding that date.
   "If the district which the person has been chosen to represent has been established less than six months prior to the date of his election, then in addition to (1) and (2) above, he shall have resided in the district for as long as it has been established.
   "A person is eligible to serve as a Senator, if he has attained the age of twenty-five years, or as a Delegate, if he has attained the age of twenty-one years, on the date of his election."
   The word "resided" in the above quoted provisions has consistently been construed to mean "domiciled." *Blount v. Boston*, 351 Md. 360, 365, 718 A.2d 1111, 1113 (1998); *Roberts v. Lakin*, 340 Md. 147, 153, 665 A.2d 1024, 1026 (1995); *Bainum v. Kalen*, 272 Md. 490, 496, 325 A.2d 392, 395–396 (1974).

Street, Frostburg. From August 1993 through August 1995, Dr. Steele and her husband lived part of the time in a residential apartment located in the same building in Frostburg as her husband's practice and part of the time at 4622 Fifteenth Street, N.W. in Washington, D.C., which was one of the many properties that they owned. Dr. Steele testified that the Frostburg address was their "official" address and that their drivers' licenses, income tax returns, insurance policies, checking accounts, etc. all reflected the Frostburg address. Frostburg is located in legislative district 1B.

From August 1995 through December 1997, Dr. Steele and her husband owned the Clarysville motel, located in Clarysville, Allegany County, which is also in legislative district 1B. According to Dr. Steele, managing the motel was more than a full time job; therefore she spent nearly every day at the motel. Dr. Steele and her husband also lived at the motel until some time in December 1997 when they sold it. Dr. Steele testified that she and her husband planned to sell most of their properties and to renovate a residential property in Cumberland, Allegany County, that had been in her family. Cumberland is in legislative district 1C. Dr. Steele stated that her intention was to renovate the Cumberland property and thereafter to live there. In November 1997, the Washington, D.C., property mentioned above had been put on the market, but it had not been sold. In January 1998, after the sale of the Clarysville motel, Dr. Steele stayed at the Washington property to prepare it for sale. Dr. Steele's husband remained in Frostburg and lived in one of the residences in the building that contained his office. Dr. Steele and her husband were with each other on weekends, sometimes in Washington and sometimes in Frostburg.

On January 13, 1998, Dr. Steele registered in legislative district 1B to vote. In so doing, Dr. Steele stated under oath that she was a resident of legislative district 1B. She had not voted in the past ten years and had been required to re-register. When she registered to vote, Dr. Steele was renovating the Washington property and taking care of many other rental properties owned by her and her husband. At

the time of trial Dr. Steele owned the following properties: 42 and 44 West Mechanic Street, Frostburg; 1, 3, 5, 7, 9, and 21 Park Street, Frostburg; 32 Mechanic Street, Frostburg; 220 West Main Street, Frostburg; 513 Oldtown Road, Cumberland; 4622 Fifteenth Street, N.W., Washington. The property located in Cumberland is the family property that Dr. Steele stated that she intended to renovate and move into.

On April 21, 1998, Dr. Steele's husband suddenly passed away. Dr. Steele stopped renovating the Washington property and stayed in Allegany County to take care of her husband's affairs. She spent her time dealing with her husband's chiropractic practice and all of the rental properties. A friend of Dr. Steele's, Mary Miltenberger, offered to rent an apartment to Dr. Steele for $250.00 a month, and Dr. Steele accepted the offer. The apartment is located at 529 North Centre Street, Cumberland, which is in legislative district 1C. Dr. Steele moved into this apartment on April 27, 1998. The Cumberland apartment is furnished, and the utilities are included in the rent. Dr. Steele testified that she moved her personal belongings into the Cumberland apartment.

On May 5, 1998, Dr. Steele changed her voter registration to reflect the new Cumberland address, thus stating under oath that she was a resident of legislative district 1C. Dr. Steele, on June 11, 1998, filed her certificate of candidacy for the House of Delegates which was also filed under oath. In June 1998, Dr. Steele changed the registration of one of her motor vehicles and her driver's license to reflect the Cumberland address. On August 1, 1998, Dr. Steele moved from the back apartment at 529 North Centre Street, Cumberland, to the front apartment in the same building. On August 12, 1998, this lawsuit was filed.

The plaintiffs introduced evidence that some of Dr. Steele's neighbors had not seen her outside in the vicinity of the Cumberland apartment. Dr. Steele testified that she travels a great deal but has spent at least fifty percent of her nights at the Cumberland apartment. She stated that she is very busy and is up early in the morning and out until very late at night.

During the time period at issue, Dr. Steele testified that she traveled to Connecticut, Massachusetts, New York, Pennsylvania, Virginia, West Virginia, and many places in Maryland. She continued to manage her husband's affairs and her real estate.

Dr. Steele has three bank accounts, two of which list the North Centre Street, Cumberland, address. Dr. Steele also has a credit card and a bank account which reflect the Washington, D.C., address. Dr. Steele stated that she receives personal, business and campaign mail at the Cumberland apartment. Dr. Steele has never registered to vote in Washington, D.C., registered a car in Washington, used the Washington address on her driver's license, nor has she ever paid District of Columbia income tax. According to the testimony, Dr. Steele kept only minimal clothing and furniture at the Washington address. Dr. Steele voted in the September 15, 1998, primary election in legislative district 1C.

## II.

After the two-day trial, the circuit court filed an opinion and order denying the plaintiffs' request for relief. The circuit court initially held that the plaintiffs' action was untimely. The court took the position that the suit was governed by the provisions of former Maryland Code (1957, 1997 Repl.Vol.), Art. 33, §§ 19–1 through 19–5. Section 19–3 required that a petition for judicial relief under the subtitle be filed within 20 days of the act or omission relating to an election, or within 20 days after it became known to the plaintiff, or within 20 days of the official canvas of election results.[2] The circuit court found that Dr. Steele's certificate of candidacy was filed on June 11, 1998, that the plaintiffs knew of it on July 7, 1998, and knew on July 7, 1998, of the question concerning Dr. Steele's domicile. Thus, according to the court, § 19–3 re-

---

2.  As a result of a recent revision of the Election Code, the provisions of §§ 19–1 through 19–5 have been recodified as Code (1957, 1997 Repl. Vol., 1998 Supp.), Art 33, §§ 12–201 through 12–204. The time periods for filing judicial challenges set forth in § 12–202 have been shortened.

quired that the plaintiffs file their action by July 27, 1998. Since the action was not filed until August 12, 1998, the court held that it was time barred.

Alternatively, the circuit court held that, if the plaintiffs' action was timely, the plaintiffs failed to establish that Dr. Steele was not domiciled in Maryland and in legislative district 1C for the required period of time. The court set forth findings of fact delineating Dr. Steele's various connections with Allegany County, Frostburg, Clarysville, and Cumberland during the relevant periods. The court's findings indicated that Dr. Steele had been domiciled in legislative district 1B for several years prior to April 27, 1998, and that, since April 27, 1998, she has been domiciled in Cumberland in legislative district 1C.

In this Court, the plaintiffs argued that the provisions of Art. 33, §§ 19–1 through 19–5, have no application to this case and that the circuit court erred in holding that the action was untimely. As to the circuit court's alternative holding, the plaintiffs assert that Dr. Steele had not been domiciled in the State of Maryland for the required one year minimum period because she lived in Washington, D.C., from January to April 1998. The plaintiffs further assert that Dr. Steele had not been domiciled in legislative district 1C for the six month minimum period.

### III.

In our view, the circuit court's alternative ground for its decision, namely that Dr. Steele had met the domicile requirements of Article III, § 9, of the Maryland Constitution, was supported by the evidence and the applicable principles of Maryland law regarding domicile. Consequently, we need not and shall not address the circuit court's holding and the parties' arguments concerning the applicability of and the requirements under former Art. 33, §§ 19–1 through 19–5.

There was little or no direct conflict in the evidence presented to the circuit court, although some of the evidence may have been subject to conflicting inferences as to certain

matters. Nevertheless, in reviewing a case such as this tried by the court, we defer to the trial court's resolution of disputed facts or inferences. We "will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." Maryland Rule 8-131(c). In addition, we must consider the evidence in the light most favorable to the prevailing party. *Urban Site v. Levering,* 340 Md. 223, 230, 665 A.2d 1062, 1065 (1995). With these principles in mind, we shall now turn to the plaintiffs' arguments.

### A.

The plaintiffs first contend that Dr. Steele was not domiciled in Maryland for one year prior to the 1998 general election as required by Art. III, § 9, of the Maryland Constitution. They rely upon the evidence that Dr. Steele spent her weekdays at her Washington, D.C., property from January 1998 to April 1998.

As recently reviewed by this Court in *Blount v. Boston,* 351 Md. 360, 368, 718 A.2d 1111, 1115 (1998), quoting *Bainum v. Kalen,* 272 Md. 490, 497, 325 A.2d 392, 396 (1974), "the 'controlling factor in determining a person's domicile is his intent. One's domicile, generally, is that place where he intends it to be.'" Although a person's statements of his or her intent as to domicile should be considered, the intent " 'is best shown by objective factors,'" *Blount v. Boston, supra,* 351 Md. at 368, 718 A.2d at 1115, quoting *Comptroller v. Haskin,* 298 Md. 681, 691, 472 A.2d 70, 75 (1984). Under our cases, the two most important objective factors or contacts showing a person's intent regarding domicile are where the person actually lives during the pertinent time period and where the person votes or is registered to vote. *Blount,* 351 Md. at 368-369, 718 A.2d at 1115. Numerous other factors or contacts with one place or another are also important in

showing a person's intent.[3]

■ As the recent *Blount* opinion also pointed out, 351 Md. at 370, 718 A.2d at 1116, no one factor or circumstance is conclusive in ascertaining domicile, and the factors relating to the different jurisdictions in question must be examined and weighed. Moreover, numerous "cases have held that persons were domiciled in particular jurisdictions even though they did not actually live in those jurisdictions during the relevant time periods." *Blount,* 351 Md. at 371, 718 A.2d at 1116, and cases there cited.

■ Furthermore, once a person has clearly established his or her domicile in a particular geographical area, "there is a presumption that it continues, and the 'person retains his [or her] domicile there unless the evidence affirmatively shows an abandonment of that domicile' and the acquisition of 'a new one,' " *Blount,* 351 Md. at 371, 718 A.2d at 1116–1117, quoting *Bainum v. Kalen, supra,* 272 Md. at 498, 325 A.2d at 396–397.

■ In light of the above-reviewed principles and the evidence in this case, the circuit court correctly held that Dr. Steele had not abandoned her Maryland domicile in January 1998 and established a new domicile in the District of Columbia. Dr. Steele had long been domiciled in Allegany County, Maryland, residing both in Frostburg and Clarysville. Therefore, a presumption arose that Maryland continued to be her domicile after January 1998.

---

3. As this Court stated in *Bainum v. Kalen, supra,* 272 Md. at 499, 325 A.2d at 397, these factors

"include such things as: the paying of taxes and statements on tax returns; the ownership of property; where the person's children attend school; the address at which one receives mail; statements as to residency contained in contracts or other documents; statements on licenses or governmental documents; where furniture and other personal belongings are kept; which jurisdiction's banks are utilized; membership in professional, fraternal, religious or social organizations; where one's regular physicians and dentists are located; where one maintains charge accounts; and any other facts revealing contact with one or the other jurisdiction."

Dr. Steele testified that she had every intention of returning to Frostburg after she finished preparing the Washington, D.C., home for sale. Dr. Steele returned to Frostburg on several weekends during this period. She did not change any of her business or personal documents to reflect the Washington address and in fact registered to vote in Maryland during the period when she was staying in Washington. As mentioned earlier, the place of voter registration is one of the two most important factors in determining domicile. *Blount,* 351 Md. at 368–369, 718 A.2d at 1115. The other factors pertinent to show a person's intent concerning domicile almost all indicate a Maryland domicile continuing after January 1998. The Frostburg address was listed on Dr. Steele's business documents and tax returns. The Frostburg address was reflected on her driver's license and vehicle registration. The majority of her mail was received at the Frostburg address. She paid Maryland income tax for this period, and she had few personal items at the Washington address.

Dr. Steele testified that she planned to return to Allegany County after she renovated the Washington property, and she stated that she had no intention of abandoning her Allegany County domicile when she went to Washington in January 1998. A temporary visit by a Marylander to the District of Columbia solely for the purpose of preparing property for sale constitutes no evidence of an intent to abandon an established Maryland domicile.

### B.

The plaintiffs alternatively argue that, if Dr. Steele was continuously domiciled in Maryland for one year prior to the general election of November 3, 1998, she was domiciled in Frostburg, at 42 West Mechanic Street, which is in legislative district 1B. The plaintiffs assert that such domicile in Frostburg continued at least until the mid-summer of 1998. The plaintiffs' position is that the actions which Dr. Steele took in late April and early May of 1998 were insufficient to constitute an abandonment of her domicile in legislative district 1B and an establishment of a new domicile in Cumberland in legisla-

tive district 1C.  Therefore, according to the plaintiffs, Dr. Steele did not meet the constitutional requirement of domicile in legislative district 1C for six months preceding the November election.

■  Again, considering the legal principles regarding domicile and the evidence introduced below, viewed most favorably for the prevailing party, the circuit court was justified in concluding that Dr. Steele had changed her domicile from legislative district 1B to legislative district 1C at least six months before the November election.

Dr. Steele testified that, upon moving to the Cumberland apartment on April 27, 1998, she intended to abandon her prior domicile in legislative district 1B and establish a new domicile in legislative district 1C.  She further testified that after April 27, 1998, she has spent at least fifty percent of her nights at the Cumberland apartment and only two nights at the Frostburg address.  She registered to vote in legislative district 1C in early May 1998.  Dr. Steele's intent to abandon her domicile in district 1B and establish a new domicile in district 1C was further confirmed by the changing of her address on her driver's license, vehicle registration, and two bank accounts to reflect the Cumberland address, by her moving personal belongings to the Cumberland apartment, and by her using the Cumberland address for personal, business and political purposes, thereby receiving personal, business and political mail at the Cumberland apartment.

There was testimony on behalf of the plaintiffs supporting the inferences that, during the six month period prior to the election, Dr. Steele did not spend a great deal of time at her Cumberland apartment, that she spent considerable time in Frostburg, and that she received mail at 42 West Mechanic Street, Frostburg.  To the extent that such evidence may have contradicted the testimony and other evidence on behalf of Dr. Steele, the resolution of factual conflicts was for the circuit court.

In light of the evidence, the circuit court's findings of fact, and the legal principles concerning domicile, the circuit court

did not err in deciding in favor of Dr. Steele. For this reason, we affirmed the judgment of the Circuit Court for Allegany County.