812 A.2d 1061

Beau H. **OGLESBY**

v.

William G. **WILLIAMS, III et al.**

No. 49, Sept. Term, 2002.

Court of Appeals of Maryland.

Per Curiam Order Sept. 5, 2002.

Dec. 18, 2002.

362

Steven W. Rakow, Ocean Pines, for appellant.

Joseph E. Moore (Christopher T. Woodley of Williams, Moore, Shockley & Harrison, L.L.P., on brief), Ocean City, for appellees.

Andrew H. Baida, Sol. Gen. (J. Joseph Curran, Jr., Atty. Gen. of MD, and Judith A. Armold, Asst. Atty. Gen., on amicus curiae brief), Baltimore, amicus curiae for State of MD, for appellees.

J. Joseph Curran, Jr., Atty. Gen. of MD, Andrew H. Baida, Sol. Gen and Judith A. Armold, Asst. Atty. Gen., Baltimore, for State of MD.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, HARRELL, BATTAGLIA and THEODORE G. BLOOM (Retired, specially assigned), JJ.

BELL, Chief Judge.

The issue this case presents for resolution is whether the Circuit Court for Worcester County correctly concluded that the appellant, Beau H. Oglesby, failed to meet the eligibility requirements to run for State's Attorney for Worcester County in the November 2002 general election. After oral arguments before this Court, we issued an order affirming the judgment of the trial court. We now set forth the reasons for that order.

## I.

On December 14, 2001, the appellant filed a certificate of candidacy with the Worcester County Board of Elections, thus indicating his intention to be a candidate for election to the office of State's Attorney for Worcester County. Shortly thereafter, in January of 2002, questions began to be raised by members of the media concerning whether the appellant met

the constitutional eligibility requirements, *see* Article V, § 10, of the Constitution of Maryland,[1] i.e., whether he had "resided for at least two years, in the county, or city, in which he may be elected." One of the appellees,[2] William G. Williams, III, a registered voter and Chairman of the Worcester County Democratic State Central Committee, was aware of the issue as evidenced by his comments quoted in The Dispatch/Maryland Coast Dispatch, "[w]e're certainly keeping an eye on the situation, but we haven't formally requested an investigation into [Mr. Oglesby's] residency requirements."[3] More than four months after making those remarks, the appellee filed in the Circuit Court for Worcester County a Complaint for Declaratory Judgment, challenging the appellant's eligibility to run for State's Attorney for Worcester County and seeking to have his certificate of candidacy declared void.

In response, the appellant filed a Motion to Dismiss the Complaint for Declaratory Judgment, arguing that the action was untimely. He maintained, citing Maryland Code (1957, 1997 Repl. Vol., 1998 Supp.) Article 33, § 12–202(b),[4] that,

---

1. Article V, § 10 of the Constitution of Maryland provides:

   "No person shall be eligible to the office of State's Attorney, who has not been admitted to practice Law in this State, and who has not resided, for at least two years, in the county, or city, in which he may be elected."

2. The other appellee, Frances Sturgis, was added as a plaintiff in the declaratory judgment action to assure the viability of the litigation, after the trial court ruled, under Maryland Code (1957, 1997 Repl.Vol., 1998 Supp.) Article 33, § 12–202(b), on the timeliness of the filing of the action.

3. *See* Shawn J. Soper, *Residency Issues Surround State's Attorney Candidate*, The Dispatch/Maryland Coast Dispatch, January 25, 2002, at 12.

4. Article 33, § 12–202 pertains to "Judicial challenges." It provides:

   "(a) Generally.—If no other timely and adequate remedy is provided by this article, a registered voter may seek judicial relief from any act or omission relating to an election, whether or not the election has been held, on the grounds that the act or omission:

   "(1) Is inconsistent with this article or other law applicable to the elections process; and

   "(2) May change or has changed the outcome of the election.

because the appellee had knowledge of the predicate fact for his judicial challenge as early as January 25, 2002 when he was quoted on the subject in The Dispatch/Maryland Coast Dispatch, he had ten (10) days to file an action challenging the appellant's candidacy. Noting that the appellee did not file his action within that 10–day time period, the appellant concluded that the appellee's action was time-barred and, thus, could not challenge his candidacy. The trial court denied the appellant's Motion to Dismiss. Nevertheless, Mr. Williams filed an amended Complaint adding as an additional plaintiff, Frances Sturgis, the other appellee.

Following trial, the Circuit Court rejected the appellant's argument that this action was controlled by the Election Code, Article 33, §§ 12–201 *et seq.,* thus, confirming its prior ruling that the declaratory judgment action was timely filed. The court also found that two days before being added as a party, Ms. Sturgis had no knowledge of the lawsuit or of the appellant's residency qualifications.

The court viewed the issue to be resolved solely as involving the question whether Mr. Oglesby met the constitutionally imposed residency requirements for the office of State's Attorney and, thus, qualified to run for that office. On that issue, the appellant admitted that he had been domiciled in Wicomico County for a period of time beginning in December 1995, until some point in 2000. He argued, however, that his purchase of real property in Worcester County, coupled with his intention to be domiciled there, effectively established his residency within the two-year period prescribed by Article V, Section 10 of the Maryland Constitution. In the alternative, he submitted that the constitutional provision at issue permit-

---

"(b) Place and Time of Filing.—A registered voter may seek judicial relief under this section in the appropriate circuit court within the earlier of:

"(1) 10 days after the act or omission or the date the act or omission became known to the petitioner; or

"(2) 7 days after the election results are certified, unless the election was a gubernatorial primary or special primary election, in which case 3 days after the election results are certified."

ted him to tack prior periods of residency in Worcester County to his current residency to satisfy the two-year residency requirement. The Circuit Court rejected both arguments, holding that the "[c]onstitutional requirement for residency is a strict rubric [and] . . . [w]hile the precise words are not within the constitutional provision, a candidate for the office of State's Attorney must live for two years *immediately prior to the election* within the county in which he or she runs."

Considering and weighing the factors for resolving questions of residency identified by this Court in *Bainum v. Kalen,* 272 Md. 490, 499, 325 A.2d 392, 397 (1974), the court then concluded that Mr. Oglesby failed affirmatively to demonstrate that he had changed his domicile to Worcester County prior to November 5, 2000, two years prior to the election in which the appellant intended to run as a candidate. The Circuit Court declared that Mr. Oglesby did not meet the constitutional eligibility requirements to run for the Office of State's Attorney and, consequently, ordered that Mr. Oglesby's name not be placed on the November 5, 2002 General Election Ballot for that office. The appellant noted an appeal to the Court of Special Appeals, and this Court issued, on its own initiative, a writ of certiorari prior to proceedings in that court. *Oglesby v. Williams,* 370 Md. 268, 805 A.2d 265, 2002 Md. Lexis 579 (2002).

## II.

We set out the facts as gleaned from the trial court's opinion to guide our review of this case. The appellant graduated from the University of Baltimore Law School in 1994 and is currently licensed to practice law in the State of Maryland. From February 1995 until September 1995, he resided, under a six-month lease, at 24½ 48th Street in Ocean City, Maryland, where he received his mail. During this seven-month period, the appellant was working full-time, in Wicomico County, as a law clerk in the Wicomico County Circuit Court in Salisbury, Maryland. In addition, the appellant worked part-time in Worcester County, at a retail outlet

in Ocean City, Maryland. He was not registered to vote in either Wicomico or Worcester County. Until December 12, 1995, the appellant was registered to vote in Prince George's County.

In September 1995, the appellant relocated to Wicomico County, where he practiced law. Within a few month of relocation, he registered to vote in Wicomico County. After four years of residing in Wicomico County, he and his wife, in the spring of 2000, decided to relocate in Worcester County. After appellant's wife changed her primary working area to Worcester County, the Oglesbys engaged a realtor to help find a suitable home in Worcester County for purchase. Their attempts to find a suitable home that fit their needs having proved unsuccessful, the couple bought a parcel of land, located at 50 Capetown Road, Ocean Pines, Maryland, on which to build a permanent residence. In July of 2000, the contract for purchase of the lot was executed and the couple tendered an earnest money deposit.

On September 5, 2000, the Oglesbys closed on the lot and the construction financing and construction began almost immediately. The appellant listed his Wicomico County residence as his address on the deed. Throughout the construction period, the appellant made almost daily trips to the construction site to inspect the progress of the construction. Although the bulk of his mail was still being delivered to his Wicomico County address, he arranged to receive mail relating to insurance and the bank loans for the Ocean Pines property at the Ocean Pines address. The appellant paid water and sewer fees on his new home while it was under construction. In addition, he paid home-owner association dues to the Ocean Pines Association and property taxes to Worcester County. At the same time, the appellant paid taxes in Wicomico County. During this period, he remained a member of the Wicomico County Bar Association, but did not join the Worcester County Bar Association.

As he had done while a resident of Wicomico County—the court found that the appellant had voted in most of the primary and general elections in Wicomico County—the appel-

lant voted in the November 7, 2000 general election in Wicomico County. In order to vote in Wicomico County, a voter, upon registering to vote, must sign an oath attesting to residency in Wicomico County.[5] The appellant did not change his driver's license and voter registration, expressly evidencing his Worcester County residence, until April of 2001.[6]

The certificate of occupancy for the appellant's Worcester County home was issued on December 18, 2000. The Oglesbys moved into the Worcester County home on December 20, 2000, and they have since lived there continuously.

The trial court concluded that the

"evidence conclusively demonstrates that [Wicomico County was the appellant's] domicile, and the question before this court is whether the domicile ended—and, consequently [the appellant's] Worcester County domicile began—on September 5, 2000 when [the appellant] closed on property in Worcester County, or whether [the appellant's] domicile changed following November 5, 2000, the date that [the appellant] would have to domicile in Worcester County in order to be eligible for the office of State's Attorney."

### III.

In this Court, the appellant makes three arguments in urging this Court to reverse the judgment of the trial court:

---

**5.** The appellant, at trial, testified that he voted in Wicomico County as a matter of convenience because the polling place was located one-half mile from his Wicomico County residence and that there was a short period of time within which he could change his voter registration and still vote. He also testified, however, that he did not investigate what period of time he had to change his voter registration or whether a change of registration was possible prior to the November 2000 general election.

In this State, it is a crime, punishable by a fine not to exceed $2,500 or imprisonment for not more than 5 years or both, for a person wilfully and knowingly to "vote in an election district or precinct without the legal authority to vote in that election district or precinct." Art. 33, § 16–201.

**6.** The trial court found that Mr. Oglesby filed an application to register as a voter in Worcester County on April 13, 2001. The application was apparently not approved until June 2001.

that, pursuant to the Election Code, Article 33, §§ 12–201 *et. seq.*, the challenge, by the appellees Williams and Sturgis, to the appellant's candidacy was time-barred; that the appellant, due to the special circumstances of his relocation to Worcester County, fully complied with the residency requirements of the State Constitution; and that, by tacking his prior period of Worcester County residency to his current residency, the appellant fully complied with the residency requirements of the State Constitution. We reject each of those arguments.

### A.

■ To be sure, § 12–201 makes the provisions of the subtitle pertaining to judicial challenges of contested elections applicable "to an issue arising in an election conducted under" the Election Code. One such issue arguably is the timeliness of a challenge to a candidacy, pursuant to § 12–202(b). As we have seen, that provision permits a registered voter to "seek judicial relief ... in the appropriate circuit court within the earlier of: (1) 10 days after the act or omission or the date the act or omission became known to the petitioner; or (2) 7 days after the election results are certified, unless the election was a gubernatorial primary or special primary election, in which case 3 days after the election results are certified." There is evidence that the appellee Williams was aware of the issue of the appellant's eligibility to run for State's Attorney some four months prior to filing the declaratory judgment action. Nevertheless, we shall again not reach the issue.[7]

At oral argument in this Court, counsel for the appellant conceded that if the addition of Ms. Sturgis as a plaintiff was

---

7. We have not yet decided this issue. Although the appellant cites our decision in *Stevenson v. Steele,* 352 Md. 60, 720 A.2d 1176 (1998) as support for the applicability of § 12–202(b) to the case *sub judice,* in *Stevenson,* we held that "we need not and shall not address the circuit court's holding and the parties' arguments concerning the applicability of and the requirements under former Art. 33, §§ 19–1 through 19–5," relying instead on the alternative grounds—that the evidence established domicile—on which the trial court decided the case. *Stevenson,* 352 Md. at 68, 720 A.2d at 1180.

proper, then the applicability of the Election Code would be a moot issue. Resolution of that question is governed by Maryland Rule 2–212. That rule provides for the permissive joinder of parties in Circuit Court when a "person asserts a right to relief jointly, severally or in the alternative in respect to or arising out of the same transaction, occurrence or series of transactions or occurrences, and if any question of law or fact common to all these persons will arise in the action."

The evidence at trial indicated that the joinder of Ms. Sturgis as a plaintiff was a hotly contested issue, with both sides producing evidence in support of, and by way of challenge to, her permissive joinder. Counsel for the appellant challenged the evidence offered by the appellees to establish that Ms. Sturgis did not have disqualifying information within the relevant time period, arguing strenuously that Ms. Sturgis had to have known of the dispute regarding the appellant's residency more than 10 days before she was added as a plaintiff in the declaratory judgment action. Moreover, Ms. Sturgis was subjected to cross-examination by counsel for the appellant.

The trial court found that Ms. Sturgis, a registered voter since 1940, was added as a plaintiff only two days after learning of the appellant's challenged residency status. We "will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." Maryland Rule 8–131(c).[8] In addition, we must consider the evidence in the light most favorable to prevailing party. *Urban Site v. Levering,* 340 Md. 223, 230, 665 A.2d 1062, 1065 (1995); *Geo. Bert.Cropper, Inc. v. Wisterco,* 284 Md. 601, 620, 399 A.2d 585, 595 (1979). Thus, we decide not

---

8. Maryland Rule 8–131 provides

"(c) Action Tried Without a Jury. When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgement of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of witnesses."

whether the trial judge's conclusions of fact were correct, but only whether they were supported by a preponderance of the evidence. E.g., *Levering*, 340 Md. at 230, 665 A.2d at 1065; *State Insurance Comm'r v. Nat'l Bureau*, 248 Md. 292, 305, 236 A.2d 282, 289 (1967). We conclude that the Circuit Court did not err in joining Ms. Sturgis as an additional plaintiff. Accordingly, we need not, and do not, address the applicability to this case of § 12–202(b) of the Election Code.

### B.

▮ Article V, § 10 of the Constitution of Maryland, titled "Qualifications of State's Attorneys," provides that "[n]o person shall be eligible to the office of the State's Attorney who has not been admitted to practice law in this State, and who has not resided, for at least two years, in the county, or city, in which he may be elected." Const., Art. V, § 10. The word "resided" has expressly been held by this Court to mean domiciled. *Blount v. Boston*, 351 Md. 360, 364–66, 718 A.2d 1111, 1113–14 (1998); *Roberts v. Lakin*, 340 Md. 147, 153, 665 A.2d 1024, 1027 (1995) ("This is in accord with our decisions generally that the words "resided" or "resident" in various constitutional and statutory provisions mean "domiciled" or "domiciliary" unless a contrary intent is shown."); *Rasin v. Leaverton*, 181 Md. 91, 93, 28 A.2d 612, 613 (1942) ("The requirements in the Constitution of residence for political or voting purposes is one of a place of fixed, present domicile"); *See also Stevenson v. Steele*, 352 Md. 60, 69, 720 A.2d 1176, 1180 (1998); *Garcia v. Angulo*, 335 Md. 475, 477, 644 A.2d 498, 499 (1994); *Wamsley v. Wamsley*, 333 Md. 454, 458, 635 A.2d 1322, 1324 (1994). Thus, any inquiry into whether a candidate for the Office of State's Attorney meets the "residency' requirements set forth in Article V, § 10, must focus upon the candidate's domicile. *Blount*, 351 Md. at 366, 718 A.2d at 1114.

▮ This Court's longstanding view on determining a person's domicile was stated in *Roberts, supra*, 340 Md. at 153, 665 A.2d at 1027, where the Court wrote:

"The words reside or resident mean domicile unless a contrary intent is shown. A person may have several places of abode or dwelling, but he can have only one domicile at a time. Domicile has been defined as the place with which an individual has a settled connection for legal purposes and the place where a person has his true, fixed, permanent home, habitation and principal establishment, without any present intention of removing therefrom, and to which place he has, whenever he is absent, the intention of returning. The controlling factor in determining a person's domicile is his intent. One's domicile, generally, is that place where he intends to be. The determination of his intent, however, is not dependent upon what he says at a particular time, since his intent may be more satisfactorily shown by what is done than by what is said. Once a domicile is determined or established a person retains his domicile at such place unless the evidence affirmatively shows an abandonment of that domicile. In deciding whether a person has abandoned a previously established domicile and acquired a new one, courts will examine and weigh the factors relating to each place. This Court has never deemed any single circumstance conclusive. *However, it has viewed certain factors as more important than others, the two most important being where a person actually lives and where he votes. Where a person lives and votes at the same place such place probably will be determined to constitute his domicile.* Where these factors are not so clear, however, or where there are special circumstances explaining a particular place of abode or place of voting, the Court will look to and weigh a number of other factors in deciding a person's domicile."
*Id.,* quoting *Dorf v. Skolnik, supra,* 280 Md. at 116–117, 371 A.2d at 1102–1103 (emphasis in original). Furthermore, this Court has stated that the place of voting is the "highest evidence of domicile." *Blount, supra,* 351 Md. at 369, 718 A.2d at 1115; *Bainum, supra,* 272 Md. at 498, 325 A.2d at 397 ("the two most important elements in determining domicile are where a person actually lives and where he votes"); *Roberts, supra,* 340 Md. at 154, 665 A.2d at 1027 ("Evidence

that a person registered or voted is . . . ordinarily persuasive when the question of domicile is at issue," *quoting Comptroller v. Lenderking,* 268 Md. 613, 619, 303 A.2d 402, 405 (1973)). Furthermore, actual residence, coupled with voter registration, "clearly create[s] a presumption that [the person] was domiciled" there. *Roberts, supra,* 340 Md. at 155, 665 A.2d at 1028. *See Bainum,* 272 Md. at 498–499, 325 A.2d at 397 ("[w]here the evidence relating to voting and the evidence concerning where a person actually lives both clearly point to the same jurisdiction, it is likely that such place will be deemed to constitute the individual's domicile"). In other words, the law presumes that where a person actually lives and votes is that person's domicile, unless special circumstances explain and rebut the presumption. *Id., citing Harrison v. Harrison,* 117 Md. 607, 615, 84 A. 57, 59 (1912).

In *Blount,* we noted that the "concept of domicile is somewhat elusive." *Blount, supra,* 351 Md. at 367, 718 A.2d at 1114. Nevertheless, the principles for determining a person's domicile are well settled. A domicile once established continues until a new domicile is established. *Blount, supra,* 351 Md. at 371, 718 A.2d at 1116–1117 (once a person's place of domicile is determined, there is a presumption that it continues until superseded by new domicile). To establish a new domicile there must be an "abandonment" of the former domicile and an "acquisition" of a new domicile. *Id.; Bainum,* 272 Md. at 498, 325 A.2d at 396–397; *see also Roberts, supra,* 340 Md. at 154, 665 A.2d at 1027. Furthermore, our case law has held that "[i]n order to effect a change of domicile, 'there must be an actual removal to another habitation, coupled with an intention.' " *Blount, supra,* 351 Md. at 372, 718 A.2d at 1117, *quoting Bainum,* 272 Md. at 498, 325 A.2d at 397; *Shenton v. Abbott,* 178 Md. 526, 530, 15 A.2d 906, 908 (1940). The "abandonment of the old domicile [must be] so permanent as to exclude the existence of an intention to return to the former place, [and] . . . there must be both the *animus manendi* and *animus non revertendi." Shenton, supra,* 178 Md. at 534, 15 A.2d at 910. We have further held that, "[i]f a person has actually moved to a new abode, with the intention

of remaining there for an indefinite time, and establishing it as a place of fixed present domicile, that place is to be deemed his domicile, notwithstanding he may entertain a floating intention to return to his former domicile at some future time." *Id.* at 532–533, 15 A.2d at 909. We further explained these firmly rooted concepts in *Blount*, when we stated that "there are two aspects of the intent element which are prerequisites for a change of domicile." *Blount*, 351 Md. at 372, 718 A.2d at 1117. First, the person must intend to abandon his or her former domicile. Second, the new place of habitation must be intended by the person to be the new domicile. *Id.* Both factors must be firmly established together to fulfill the intent requirement.

We begin our analysis with the presumption that appellant was domiciled in Wicomico County beginning in December 1995 until some time in 2000, a proposition with which the appellant does not disagree. The evidence showed that, during this time frame, the appellant actually resided, and was registered to vote, in Wicomico County, thus creating the presumption. Thus, by his own admission, the appellant was a domiciliary of Wicomico County during this time. In addition to living and voting in Wicomico County, he worked and paid taxes in Wicomico County. The appellant maintained professional memberships and associations in Wicomico County. Finally, the majority of his personal belongings were located at his Wicomico County residence.

Assuming that the appellant is not entitled to tack any prior Worcester County residency onto his current residency in that county, he could satisfy the residency requirement for the office of State's Attorney of Worcester County only had he established his Worcester County residency prior to November 5, 2000, or two years preceding the date of the general election in which he sought to be elected. Thus, our inquiry into the appellant's domicile involves determining whether the appellant effectively abandoned his previously established domicile of choice, *viz* Wicomico County, and established a new domicile in Worcester County prior to November 5, 2000.

Relying on this Court's holdings in *Stevenson* and *Blount*, the appellant argues that his domicile should be determined by his intent. On that premise, he urges the Court to view his ownership of real property and the construction of a new home thereon, coupled with his actions in furtherance of that ownership of real property, as forming the requisite intent to establish a domicile in Worcester County and, consequently, the affirmative acts to establish that he abandoned his Wicomico County residence. More specifically, he invites the Court to conclude that his domicile in Worcester County began on September 5, 2000 because he

"purchased . . . real property, paid property taxes, entered into a construction contract for a new home, paid homeowners' association dues, paid sewer and water fees, received mail in Worcester County, visited Worcester County on an almost daily basis, entered into a contract for the delivery of new appliances to his new home, and became reacquainted with his new area of residence by meeting neighbors and shopping and dining at local establishments."

Thus, the appellant believes, and asserts, that his property ownership in Worcester County established his intent and his actions with respect thereto distinguish this case from all the other residency challenges decided previously by this Court. We are not persuaded.

We do not question, to be sure, that the appellant intended to make Worcester County his residence, his fixed, permanent home and habitation and, thus, to abandon his Wicomico County residence. We simply do not believe that the intent was perfected before the appellant moved into the Worcester County home; the appellant's intent was not actualized until then. As counsel for the appellees noted, there are many citizens of Maryland who intend to change their domicile upon retirement and may make quite elaborate plans toward fulfilling that intent by building a retirement home in the place where they intend to retire. Such plans, by themselves, do not prove the abandonment of an existing domicile, although it is evidence of the intention to do so. Were such planning to be sufficient, the intent requirement would swallow the re-

quirement of an actual removal to another habitation with the intent to reside there indefinitely.

Although *Stevenson* cites *Blount* for the proposition that "numerous 'cases have held that persons were domiciled in a particular jurisdiction even though they did not actually live in those jurisdictions at the relevant time period,' " *Stevenson,* 352 Md. at 70, 720 A.2d at 1180, *quoting, Blount,* 351 Md. at 371, 718 A.2d at 1116, the appellant's reliance on *Stevenson* and *Blount* are misguided. In *Stevenson,* the plaintiffs argued alternatively that Dr. Steele, the Republican Party's nominee for the House of Delegates from Legislative District 1C, did not satisfy either the constitutional requirement that she be a Maryland domiciliary for a year before the relevant general election, 352 Md. at 69, 720 A.2d at 1180, or that she be domiciled in the district in which she was running for six (6) months. *Id.* at 71, 720 A.2d at 1181. As to the latter, they maintained that the actions Dr. Steele took with respect to changing her domicile were insufficient to constitute an abandonment of her domicile in Legislative District 1B and the establishment of a new domicile in Cumberland in Legislative District 1C. *Id.* at 71–72, 720 A.2d at 1181–1182. Rejecting the former argument, we pointed to the fact that she "had long been domiciled in Allegany County, Maryland," which gave rise to a presumption as to her domicile, *id.* at 70, 720 A.2d at 1181, and concluded that "[a] temporary visit by a Marylander to the District of Columbia solely for the purpose of preparing property for sale constitutes no evidence of an intent to abandon an established Maryland domicile." *Id.* at 71, 720 A.2d at 1181.

Turning to the alternative argument, we held that the Circuit Court did not err in holding that Dr. Steele had changed her domicile from Legislative District 1B to Legislative District 1C. Acknowledging that there was a conflict in the evidence, but setting out the evidence that supported the change, we explained that resolution of the conflict was for the trial court:

"Dr. Steele testified that, upon moving to the Cumberland apartment on April 27, 1998, she intended to abandon her

prior domicile in legislative district 1B and establish a new domicile in legislative district 1C. She further testified that after April 27, 1998, she has spent at least fifty percent of her nights at the Cumberland apartment and only two nights at the Frostburg address. She registered to vote in legislative district 1C in early May 1998. Dr. Steele's intent to abandon her domicile in district 1B and establish a new domicile in district 1C was further confirmed by the changing of her address on her driver's license, vehicle registration, and two bank accounts to reflect the Cumberland address, by her moving personal belongings to the Cumberland apartment, and by her using the Cumberland address for personal, business and political purposes, thereby receiving personal, business and political mail at the Cumberland apartment,"

*Id.* at 72, 720 A.2d at 1181.

In *Blount,* the issue was "whether a long-time member of the Maryland General Assembly, who is a candidate for reelection, has abandoned his domicile in the Baltimore City legislative district which he has been representing and established a new domicile in Baltimore County." 351 Md. at 363, 718 A.2d at 1113. A political challenger argued that Senator Blount's primary place of abode was located outside of the 41st Legislative District and that Senator Blount retained an apartment in the 41st Legislative District solely to maintain his seat in the Senate. Concluding that Senator Blount continuously maintained an apartment and voted in the 41st Legislative District, this Court ruled that the senator's domicile had not been affected by a circumstantial change in his primary place of abode. *Blount, supra,* 351 Md. at 379, 718 A.2d at 1121. We explained:

"It is undisputed that, until the Pikesville retirement condominium was acquired in 1995, Senator Blount had been domiciled in Baltimore City continuously for over fifty years. He has been a registered voter in Baltimore City since 1952. He moved into the dwelling at 3410 Copley Road in 1966. Immediately before the Pikesville condominium was acquired in 1995, Senator and Mrs. Blount's pri-

mary place of abode was the second floor apartment at 3410 Copley Road. After the Pikesville condominium was acquired, and until the present, Senator Blount has continued to maintain the second floor apartment at 3410 Copley Road as a place of abode. He sleeps there occasionally, meets persons there during the day on legislative business, receives his mail there, lists 3410 Copley Road as his address for all official purposes and on most accounts. While, as the trial court found, the apartment at 3410 Copley Road has not been Senator Blount's primary place of abode since the acquisition of the Pikesville condominium, it is not simply a "mail drop" as asserted by the plaintiff in this case."

*Id.* at 382, 718 A.2d at 1122 (footnote omitted). Concluding the opinion, we reiterated:

"except for his principal place of sleeping, the significant circumstances in the present case confirm Senator Blount's statements that he did not intend to abandon his long established domicile in Baltimore City. This is not a case where someone desires to run for office in an area where he or she has not lived, and does not wish to live, but merely establishes a "mail drop" in that area and lists the "mail drop" as his or her address for various official and unofficial purposes. Such person has no bona fide intent to be domiciled where the "mail drop" is established. By contrast, Senator Blount has a long and solid connection with Baltimore City, with the 41st legislative district, and with 3410 Copley Road. The plaintiff in this case failed to prove that Senator Blount intended to abandon his domicile in Baltimore City and establish a new domicile in Baltimore County."

*Id.* at 387, 718 A.2d at 1124–1125.

The evidence shows that the appellant established a domicile in Wicomico County in December, 1995 and remained domiciled in that county until, at the earliest, December, 2000. He voted in the November 7, 2000 election in Wicomico County and he did not move into a residence in Worcester County until December, 2000. We hold that the appellant did not become a domiciliary of Worcester County until, at the

earliest, he actually moved into his new home on December 20, 2000.

## C.

The appellant's final argument is that, unlike the residency qualification for various elected offices under the Maryland Constitution,[9] the residency requirement prescribed by Article V, § 10 does not, by its terms, require that the residency be continuous and immediately preceding the election. Consequently, the appellant argues that this provision permits all periods of residency in the county to be considered and allows for the tacking of different periods of residency together to satisfy the requirement. Specifically, the appellant maintains that his seven-month Worcester County residency in 1995 could, and should, be tacked onto his current period of residency, thus satisfying the requirements of Article V, Section 10.[10]

---

9. See Constitution of Maryland Art. II, § 5 ("A person to be eligible for the office of Governor or Lieutenant Governor must have attained the age of thirty years, and must have been a resident and registered voter of the State for five years next immediately preceding his election."); Constitution of Maryland Art. III, § 9 ("A person is eligible to serve as a Senator or Delegate, who on the date of his election, (1) is a citizen of the State of Maryland, (2) has resided therein for at least one year next preceding that date, and (3) if the district which he has been chosen to represent has been established for at least six months prior to the date of his election, has resided in that district for six months next preceding that date."); Constitution of Maryland Art. IV, § 2 ("The Judges of all of the said Courts shall be citizens of the State of Maryland, and qualified voters under this Constitution, and shall have resided therein not less than five years, and not less than six months next preceding their election, or appointment, as the case may be, in the city, county, district, judicial circuit, intermediate appellate judicial circuit or appellate judicial circuit for which they may be, respectively, elected or appointed."); Constitution of Maryland Art. IV, § 40 ("The qualified voters of the City of Baltimore, and of the several Counties, except Montgomery County and Harford County, shall elect three Judges of the Orphans' Courts of City and Counties, respectively, who shall be citizens of the State and residents, for the twelve months preceding, in the City or County for which they may be elected.").

10. The trial court expressed doubt that the appellant was a resident of Worcester County during the seven months he lived there in 1995,

Adopting the appellant's argument requires this Court to hold that any periods of residency totaling two years could be "tacked" together to meet the constitutional residency requirements for the office of State's Attorney. We have grave doubts that the constitutional requirements for the office of State's Attorney could be fulfilled in such a manner. Indeed, it is easy to see how its application could lead to an illogical, rather than a reasonable, result, something to be avoided. *See Harris v. State*, 331 Md. 137, 145, 626 A.2d 946, 950 (1993); *D & Y, Inc. v. Winston*, 320 Md. 534, 538, 578 A.2d 1177, 1179 (1990); *Blandon v. State*, 304 Md. 316, 319, 498 A.2d 1195, 1196 (1985); *Erwin and Shafer, Inc. v. Pabst Brewing Co.*, 304 Md. 302, 315, 498 A.2d 1188, 1194 (1985). As the appellees point out, if the appellant is correct, he would have been eligible to run for State's Attorney in three jurisdictions: Prince George's County—he was domiciled there early in his life; Wicomico County—he was domiciled there for five (5) years immediately preceding his move to Worcester County; and Worcester County—his present domicile period coupled with the seven (7) month residency in 1995 adds up to more than two (2) years.[11] If the appellant's interpretation of Article V, § 10 is correct, the constitutional residency requirement would be all but meaningless.

The arguments offered by the appellant in favor of tacking were considered by this Court in *Rasin v. Leaverton*, 181 Md.

---

noting, "[t]he Court is not convinced that the Defendant was actually a resident of Worcester County during that time [in 1995]. Certainly, the Defendant never changed his voter registration to evidence his residency and he actually lived within the County for only a short period of time...."

11. The appellees proffer two other examples of the absurdity of the appellant's position, only one of which we will reproduce here:

"A person who was born in Garrett County and lived there for 3 years during his infancy would be domiciled in Garrett County by virtue of the law stating that a minor's domicile is that of his parents. That person, as a three year old infant, moves to Somerset County, at the extreme opposite end of the State of Maryland. As a sixty year old adult, qualified to practice law in Maryland, that person returns to Garrett County and files for the office of State's Attorney."

91, 28 A.2d 612 (1942), albeit in a somewhat different context. In that case, Rasin, the candidate for the office of State's Attorney of Kent County, was born in the county, but in 1932, had gone to Baltimore City, where he lived primarily to earn money to educate himself, and to receive his education. While in Baltimore, which lasted nine years, his name was stricken from the registration books of Kent County and he registered, taking an oath pursuant to applicable law, that he was a resident, and voted in the city. During the time he lived in Baltimore, he frequently visited Kent County, paid taxes there, kept clothing and other possessions, titled his automobile and stated his intention to retain his residence there. He was admitted to the bar of the State in March of 1941, and, in August, 1941, opened an office in Chestertown, Kent County, where he lived subsequently. In July of 1942, he obtained a removal certificate from the Supervisors of Elections of Baltimore City for registration in Kent County. *Id.* at 93, 28 A.2d at 613. Rasin returned to Kent County just fifteen (15) months before the general election, but, nevertheless, sought election to the office of State's Attorney for that County. The trial court found that, by the time of the election, he would not have resided in the County for the required two year period. *Id.* at 94, 28 A.2d at 613. This Court concurred. Noting that "[t]he requirement in the Constitution of residence for political or voting purposes is one of a place of fixed, present domicile," *id.* at 93, 28 A.2d at 613, *citing Howard v. Skinner,* 87 Md. 556, 559, 40 A. 379, 380 (1898); *Thompson v. Warner,* 83 Md. 14, 20, 34 A. 830, 831 (1896); *Wagner v. Scurlock,* 166 Md. 284, 291, 170 A. 539, 542 (1934), we explained:

> "There is no escaping the fact that the petitioner lived in Baltimore City during nine years before August, 1941, and meanwhile had at most an intention to return to the county only at some indefinite future time. He cherished the idea that he would retain his connection with the county, but he seems not to have continued his residence there.... Uninterrupted dwelling in the city for nine years would alone seem much more than a temporary sojourn there, or a temporary absence from home. It was not, within the

ordinary meaning of the constitutional phrase, residing in the county. And his registering and voting in Baltimore City, while not in itself conclusive evidence of residence there ... is at least strongly persuasive and confirmatory, especially as the registrant must have taken an oath that he was in fact a resident. The oath is not a meaningless form...."

*Id.* at 93–94, 28 A.2d at 613 (citations omitted). Thus, our analysis was that Rasin had abandoned his Kent County domicile and had not yet, and indeed, could not have before the election, re-established it. *See Gallagher v. Board of Sup'rs of Elections,* 219 Md. 192, 207, 148 A.2d 390, 398 (1959).

Undeterred, Rasin argued "that the absence of the words 'preceding the election,' from the requirement of residence in the clause now considered (Art. V, § 10), and the presence of those words in statements of qualifications for other officers under the same constitution, evidence an intention that previous residence is not required of candidates for State's Attorney," *id.* at 96, 28 A.2d at 614, and, therefore, a candidate could fulfill the residency requirement of the office post election and before taking office. Addressing that argument, this Court stated that

"... the Constitution of 1867 does not always possess the consistency that the argument supposes. In *Benson v. Mellor,* 152 Md. 481, 137 A. 294 (1927), this court held that all officers whose tenure are not limited to a specified time holds their office until they are superseded by duly commissioned and qualified successors, although such an extension was specifically provided for some officers only, not for all. However cogent the argument now made might be in other situations, it is not sufficient to overcome the inference of intention which the court finds in the ordinary meaning of the requirement of eligibility, and in the consequence of the contrary construction pointed out in the case quoted."

*Id.* Significantly, the "inference of intention" that the Court found in the ordinary meaning of the eligibility requirement and said was not overcome was that the residency require-

ment must be fulfilled pre-election. The *Rasin* Court was not asked to, and did not address, Rasin's prior residency in the county when determining his constitutional eligibility as a candidate. As the appellees point out, however, "[i]t is patently obvious that if Oglesby's theory of tacking on non-continuous residences is a reasonable proposition, Parks Rasin would have been eminently qualified to run for State's Attorney of Kent County in 1942."

We hold that the appellant's prior period of residency in Worcester County is irrelevant. Accordingly, we conclude that the appellant does not satisfy the constitutional residency requirements, mandated by Art. V, § 10, to run in the November 2002 general election as a candidate for State's Attorney for Worcester County.