Dear Mr. Guy R. Ayres, III, Esquire
On behalf of the Mayor and City Council of Ocean City, you have asked for our opinion whether individuals who own property in Ocean City, but live there only part of the year may register to vote in Worcester County. Your question has been prompted by a local organization that has urged condominium owners who reside elsewhere much of the year to change the location of their voter registration and vote by absentee ballot in Ocean City.
In our opinion, an individual who owns and sometimes occupies residential property in Ocean City may register to vote in Worcester County only if that individual has elected to make Ocean City his or her primary residence or "domicile." Such a decision would change the individual's legal residence for other purposes as well. If the individual intends to retain a residence in another jurisdiction as his or her primary residence, the individual should not register to vote in Worcester County.[1]
 I Background
You advise that a local organization known as the Ocean City Condominium Owners Association ("OCCOA") has recently been urging high rise condominium owners in Ocean City to change their voter registration to Worcester County. The purpose of this initiative is apparently to give part-time residents who own condominiums in the town a greater voice in local elections. You advise that, as a result, a significant number of individuals have changed their registrations. OCCOA has also contacted the City Manager concerning absentee ballots for some of these voters who plan to be at their other residence on election day.
 II Analysis
A. Voting and Residence
Various provisions of the Maryland Constitution link a citizen's exercise of the right to vote to his or her place of residence.
An individual is entitled to vote "in the ward or election district in which he resides. . ." and retains the right to vote in that location "until he shall have acquired a residence in another election district or ward. . ." Maryland Constitution, Article I, § 1. In setting forth the prerequisites for voter registration, the State Election Law lists residence in the county of registration as one of the conditions.
Annotated Code of Maryland, Election Law Article ("EL"), § 3-102(a)(3). The residency requirement is designed to protect against election fraud and to assure that voters become members of the community with a common interest in matters relating to government. See 69 Opinions of the Attorney General 138, 139 (1984).
The State Constitution also directs the Legislature to enact criminal laws to punish anyone who "shall remove into any election district, . . . not for the purpose of acquiring a bona fide residence therein, but for the purpose of voting at an approaching election, or, who shall vote in any election district . . . in which he does not reside . . . or shall vote in any county in which he does not reside." Maryland Constitution, Article I, § 5. As a result, the State Election Law establishes a criminal penalty for an individual who willfully and knowingly votes in an election district or precinct without legal authority to vote in that location. EL § 16-201(a)(4).
B. Domicile
In determining a person's residence for various legal purposes, including voter registration, the courts have developed the concept of "domicile." Oglesby v. Williams, 372 Md. 360, 372-75, 812 A.2d 1061
(2002). While an individual may have more than one dwelling, he or she has only one "domicile" at a time. Id. The Court of Appeals has adopted the following definition of "domicile":
Domicile has been defined as the place with which an individual has a settled connection for legal purposes and the place where a person has his true, fixed, permanent home, habitation and principal establishment, without any present intention of removing therefrom, and to which place he has, whenever he is absent, the intention of returning.
Id. quoting Roberts v. Lakin, 340 Md. 147, 153, 665 A.2d 1024 (1995). The primary factor in determining an individual's domicile is thus the individual's intent. Id. In other words, "[o]ne's domicile, generally, is that place where he intends [it] to be." In determining intent, the courts may place greater weight on what a person does than what the person says. Id.
The cases have listed a number of factors to which the courts may look in a doubtful case to decide where an individual intends to be domiciled. These factors include such things as property ownership, statements on tax returns, where the individual's children attend school, where mail is received, statements of residency contained in contracts or other documents, statements on licenses or governmental documents, where furniture and other personal belongings are kept, where bank and charge accounts are maintained, membership in professional, fraternal, religious, or social organizations, and where doctors and dentists are located. Blount v. Boston, 351 Md. 360, 369 (1998), quoting Bainum v. Kalen, 272 Md. 490, 499 (1974). A primary factor is where the individual actually spends time. Id.[2] See also Stevenson v. Steele,352 Md. 60, 720 A.2d 1176 (1998); 69 Opinions of the Attorney General 238 (1984) (identifying 20 factors derived from cases to help determine domicile).
C. Changing One's Domicile
Once a person establishes a domicile in one place, there is a presumption that the location remains the person's domicile unless there is affirmative evidence demonstrating that the individual has abandoned the established domicile and adopted a new one.
Oglesby, 372 Md. at 373. There must be "an actual removal to another habitation, coupled with an intention." Id. at 374, quoting Bainum v. Kalen, 272 Md. 490, 498, 325 A.2d 392 (1974). With respect to the intent element, a person must intend to both (1) abandon the former domicile and (2) adopt another location as his or her new domicile. Id. at 375. The abandonment of the old domicile must be so permanent as to "exclude the existence of an intention to return to the former place." Id. at 374, quoting Shenton v. Abbott, 178 Md. 526, 534, 15 A.2d 906 (1940). However, an individual may establish a new domicile despite a "floating intention to return to his former domicile at some future time." Id. at 375 quoting Shenton, 178 Md. at 532-33.
An individual who owns residential property in Ocean City and spends time there but is currently domiciled elsewhere, may elect to make Ocean City his or her domicile.[3] However, that individual would have to intend to establish a "true, fixed, permanent home, habitation and principal establishment" in Ocean City, "without any present intention of removing therefrom, and to which place he has, whenever he is absent, the intention of returning." For example, an individual who owns residences in Baltimore County and Ocean City and who wishes to shift his voter registration from Baltimore County to Worcester County would have to abandon his domicile in Baltimore County and establish a new domicile in Ocean City.
In several recent cases, the Court of Appeals has dealt with the question whether a candidate for public office had changed his or her domicile. See Oglesby v. Williams, supra; Stevenson v. Steele, supra; Blount v. Boston, supra. In those cases the Court required clear evidence that the individual had abandoned an established domicile and adopted a new one during a relevant time period.
At issue in Oglesby was the domicile of a prospective candidate for State's Attorney in Worcester County — i.e., whether Oglesby had been a resident of the county for the requisite period to be a candidate for that office. It was undisputed that Oglesby had previously established a domicile in Wicomico County. Oglesby argued that his purchase of real property and ongoing construction of a house in Worcester County, coupled with his intent to establish a domicile in Worcester County, transferred his domicile to that county, despite the fact that he continued to live and work in Wicomico County. The Court of Appeals accepted Oglesby's assertion that he intended to establish his domicile in Worcester County, but held that he had not "perfected" that intent prior to moving into the new home. In Blount v. Boston, the Court held that a state senator who had established a domicile at a location in Baltimore City did not abandon that domicile when he moved his primary place of abode to Baltimore County, but continued to receive mail, conduct legislative business, and occasionally reside at the Baltimore City address.
By contrast, in Stevenson v. Steele, the Court held that a candidate for the State Legislature had established a new domicile.
The Court relied on evidence that she had spent at least 50 percent of her nights at the new residence, that she had changed the address on her driver's license, vehicle registration, and bank accounts to reflect that address, and that she received mail for personal, business, and political purposes at the new address.
The act of registering to vote in a particular county itself constitutes primary evidence of an individual's intent as to his or her domicile. See Blount v. Boston, 351 Md. at 368-69. The decision to designate a particular location as one's domicile will thus have significant implications for other legal purposes besides voting. For example, as a general rule, an individual's domicile will determine the domicile of the individual's minor children. Annotated Code of Maryland, Family Law Article, § 5-204. It will thus determine where those children may attend public school. See Annotated Code of Maryland, Education Article, § 7-101(b) (child to attend public school "in the county where the child is domiciled with the child's parent. . ."). An individual's domicile will also govern such things as the allocation of the local portion of the individual's State income tax (Annotated Code of Maryland, Tax-General Article, § 10-103(a)); the jurisdiction over the individual's estate upon death (Annotated Code of Maryland, Estates 
Trusts Article, § 5-103(a); Maryland Rule 6-111); or, as illustrated in the cases outlined above, where the individual may hold public office. In addition, an individual who relinquishes a domicile in another state in favor of one in Maryland may lose eligibility for in-state tuition at public universities in the other state and may be obligated to apply for a Maryland driver's license (see Annotated Code of Maryland, Transportation Article, § 11-149; 16-101 et seq.).
 III Conclusion
In our opinion, an individual who owns a condominium in Ocean City but who is currently domiciled elsewhere may elect to make Ocean City his or her domicile and register to vote in Worcester County. To do so, the individual must be prepared to abandon the former domicile and adopt Worcester County as his or her primary residence for a variety of purposes. Such an individual could not maintain voter registration — or claim official residence — in another county or at a different address. If the individual intends to retain a residence in another jurisdiction as his or her primary residence, the individual should not register to vote in Worcester County.
 J. Joseph Curran, Jr. Attorney General Robert N. McDonald Chief Counsel Opinions Advice
[1] We thus confirm the advice previously given on this subject. See Letter of Assistant Attorney General Judith A. Armold to Delegate Galen Clagett (June 24, 2004). Neither that letter, nor this opinion, address voter qualifications that might be imposed under a municipal charter.
[2] In cases concerning the domicile of candidates for public office, the place in which the individual is registered to vote is considered the "highest evidence of domicile." Blount v. Boston, 351 Md. 360, 369,718 A.2d 1111 (1998).
[3] Of course, the voter may reside and be registered to vote in only one location at any time. For example, in Reeder v. Board of Supervisors of Elections of Queen Anne's County, 269 Md. 261, 305 A.2d 132 (1973), an individual who owned houses in both Baltimore City and Queen Anne's County sought to register to vote on local issues in the latter jurisdiction. Finding that he was domiciled in Baltimore City, the Court held that he was not entitled to vote in any other jurisdiction, regardless of whether he owned property there. *Page 172